**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-6217**

CLINTON FOLKES,

       Petitioner – Appellee,

  v.

WARDEN NELSEN,

       Respondent – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Richard Mark Gergel, District Judge. (2:19-cv-00760-RMG)

Argued: September 17, 2021                     Decided: May 10, 2022

Before AGEE and WYNN, Circuit Judges, and Frank W. VOLK, United States District Judge for the Southern District of West Virginia, sitting by designation.

Reversed and remanded with instructions by published opinion. Judge Agee wrote the opinion, in which Judge Volk joined. Judge Wynn wrote a dissenting opinion.

**ARGUED:** Michael Douglas Ross, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant. Jason Scott Luck, JASON SCOTT LUCK ATTORNEY AT LAW, Bennettsville, South Carolina, for Appellee. **ON BRIEF:** Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, Melody J. Brown, Senior Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant.

AGEE, Circuit Judge:

Clinton Folkes is serving a life sentence upon a South Carolina conviction for assault and battery with intent to kill. One claim in Folkes' state habeas petition alleged that his state appellate counsel "was ineffective for failing to file a Petition for Rehearing in the Court of Appeals thereby depriving [him] of his right to seek certiorari in the Supreme Court of South Carolina." J.A. 679. The state habeas court denied relief on that— and all other—claims. Folkes then filed a 28 U.S.C. § 2254 petition in the U.S. District Court for the District of South Carolina again alleging, verbatim, that appellate counsel had been ineffective by "failing to file a Petition for Rehearing in the Court of Appeals." J.A. 28. The district court granted § 2254 relief, but not on the ground Folkes raised. Instead, the district court determined Folkes was entitled to relief because his appellate counsel (1) failed "to timely advise [Folkes] of the adverse decision of the Court of Appeals on his direct appeal and of his right to seek further appellate review," and (2) sent a letter containing counsel's "forged signature" that "inaccurately inform[ed] [Folkes] that his state court appellate rights had been exhausted." J.A. 160.

The State of South Carolina[1] appeals, arguing that the district court's judgment conflicts with the rigorous standards that apply when a state prisoner seeks to challenge the constitutionality of his state sentence in federal court. We agree with the State and hold that the district court impermissibly altered the claim presented in Folkes' § 2254 petition

---

[1] The named respondent is Kenneth Nelsen, the applicable warden of the South Carolina Department of Corrections. For ease of reference, we refer to the warden as "the State."

2

and thus granted relief on grounds that were not properly before it. As for the claim Folkes actually raised, the district court properly held that he had not shown that he was entitled to relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). And even had Folkes' petition raised the expanded claims recognized by the district court and the dissenting opinion, Folkes would not be entitled to federal habeas relief because the Supreme Court has held that no ineffective assistance of counsel claim can arise based on conduct relating to discretionary, subsequent appeals. Accordingly, we reverse the judgment of the district court and remand with instructions to deny Folkes' petition.

## I.

In 2008, a South Carolina jury convicted Folkes of assault and battery with intent to kill, and he was sentenced to life imprisonment. *See Folkes v. Nelsen*, No. 2:19-0760-RMG, 2021 WL 62577, at *1 (D.S.C. Jan. 7, 2021) (describing Folkes' conviction as "stem[ming] from a July 2007 physical fight during which [Folkes] cut a man in the neck with a knife and was heard at the time, by witnesses who testified at trial, to have said, 'I should have killed you'").

On direct appeal, Folkes was represented by court-appointed counsel, Celia Robinson, who worked for the South Carolina Commission on Indigent Defense ("the Commission"). The appellate brief argued that the trial court had erred by refusing to give an instruction about the intent required to convict on a lesser-included offense. After briefing concluded (the appeal was not scheduled for oral argument), Robinson left her position with the Commission without notifying either Folkes or the appellate court. Ten

3

days after Robinson's departure, the South Carolina Court of Appeals issued a decision affirming Folkes' conviction. *See State v. Folkes*, No. 2010-UP-420, 2010 WL 10080232 (S.C. Ct. App. Sept. 24, 2010) (per curiam).

Several days after the decision on direct appeal was issued, Folkes received a letter on Commission letterhead purporting to bear Robinson's signature but dated two weeks after the termination of her employment. This September 2010 letter informed Folkes—incorrectly—that the South Carolina Court of Appeals had denied his petition for writ of certiorari and that his state court remedies had been exhausted. It also provided instructions about Folkes' right to file a federal petition for a writ of habeas corpus within one year of the decision.

Notwithstanding the September 2010 letter's incorrect information, the following month, Folkes filed a timely application for post-conviction relief in South Carolina state court ("the state PCR court"). He initially filed *pro se*, but later was represented by counsel, who filed an amended application raising additional claims.[2] In relevant part, the amended PCR application alleged that "Appellate Counsel was ineffective for failing to file a Petition for Rehearing in the Court of Appeals thereby depriving [Folkes] of his right to seek certiorari in the Supreme Court of South Carolina." J.A. 679. Specifically, it argued that because South Carolina procedural rules require filing a petition for rehearing in the intermediate appellate court as a prerequisite for further review in the state supreme court,

---

[2] Throughout the state PCR court and § 2254 district court proceedings, Folkes asserted additional claims that were denied. These claims are not before us on appeal, so this opinion distills the narrative to the pertinent claim.

counsel's failure to file a petition for rehearing deprived Folkes of the opportunity to pursue what he contended would have been a meritorious challenge to the jury instructions.

The state PCR court held a hearing at which Folkes, Robinson, and her Commission supervisor testified. Folkes testified that he was unaware that Robinson had left her position and that he "would have wanted his attorney to petition for rehearing and certiorari to have his case reviewed by the South Carolina Supreme Court." J.A. 793. Robinson testified that had she not left her position, "she would have petitioned for rehearing at the Court of Appeals and then for certiorari at the Supreme Court" because she thought the jury instruction claim was worth pursuing. J.A. 800. Robinson's supervisor testified that he also believed Folkes had a meritorious claim and that he could not explain why his office had not pursued it at the time. He testified that after Robinson's departure, he had reviewed all decisions issued in her pending cases and decided how to proceed, but that he had no independent recollection of reviewing the decision in Folkes' appeal or directing a particular course of action. Nor could he explain the September 2010 letter Folkes received from the Commission, other than noting that it appeared a paralegal sent the wrong form letter. Both Robinson and her supervisor testified that attorneys—not defendants— ultimately decided whether to file petitions for rehearing and for certiorari and that both stages of appellate review were discretionary with the court.

The state PCR court denied relief, concluding that an ineffective assistance of counsel ("IAC") claim cannot be brought based on appellate counsel's failure to file a petition for rehearing in the court of appeals. The court relied on *Wainwright v. Torna*, 455 U.S. 586 (1982) (per curiam), and *Ross v. Moffitt*, 417 U.S. 600 (1974), to note that

5

defendants have "no constitutional right to the effective assistance of counsel when seeking discretionary appellate review." J.A. 802. In addition, the court pointed to multiple Supreme Court of South Carolina decisions reiterating that both rehearing in the intermediate appellate court and certiorari to the state supreme court are discretionary, and that appellate counsel has no duty to pursue either course. Drawing from both lines of cases, the court concluded that Folkes' appellate counsel could not have been ineffective for failing to file a petition seeking purely discretionary review.

Folkes, still represented by counsel, petitioned the Supreme Court of South Carolina for certiorari to review the denial of his IAC claim, framing the issue as follows:

> Did the lower court err denying [Folkes] relief where the record below demonstrates that he meet [sic] his burden of proof concerning his allegation that his Sixth and Fourteenth Amendment right to effective assistance of appellate counsel was violated on direct appeal where Appellate Counsel failed to file a Petition for Rehearing in the Court of Appeals thereby depriving [him] of his right to seek certiorari in the Supreme Court of South Carolina?

J.A. 833. Consistent with this issue statement, Folkes' substantive argument pressed the missed opportunity for the state supreme court to consider the propriety of the jury instructions given that appellate counsel had not filed the requisite petition for rehearing in the court of appeals to allow further review. The petition was summarily denied.[3]

Next, Folkes timely filed a *pro se* § 2254 petition in the U.S. District Court for the District of South Carolina. The third ground for relief raised in Folkes' § 2254 petition

---

[3] Although a PCR applicant's petition for certiorari is filed with the state supreme court, the governing South Carolina rules permit the supreme court to remand the petition to the state court of appeals for decision. *See* S.C. R. App. Ct. 243(a), (*l*). That is what occurred here.

6

copied, verbatim, the claim identified in his state PCR application: "Appellate Counsel was ineffective for failing to file a Petition for Rehearing in the Court of Appeals thereby depriving the Applicant of his right to seek certiorari in the Supreme Court of South Carolina." J.A. 28; *accord* J.A. 679. His § 2254 petition later characterized the issue using the identical question he had raised in his state petition for certiorari of the state PCR court's decision:

> Did the lower court err denying [Folkes] relief where the record below demonstrates that he meet [sic] his burden of proof concerning his allegation that his Sixth and Fourteenth Amendment right to effective assistance of appellate counsel was violated on direct appeal where Appellate Counsel failed to file a Petition for Rehearing in the Court of Appeals thereby depriving [him] of his right to seek certiorari in the Supreme Court of South Carolina?

J.A. 31; *accord* J.A. 833. The petition contained no further argument or discussion supporting or elaborating upon this ground for relief.

The State moved for summary judgment. Although a magistrate judge's report and recommendation recommended granting the motion in full, the district court granted as to all grounds for relief except the third. *Folkes v. Nelsen*, No. 2:19-0760-RMG, 2020 WL 728698, at *3–4 (D.S.C. Feb. 12, 2020). In the district court's view, Folkes' third ground "raise[d] questions" that had not been adequately addressed "concerning whether [Folkes] was actually or constructively denied counsel from the time of the decision of the South Carolina Court of Appeals on the direct appeal until the time expired for petitioning for rehearing—a necessary step if review was to be sought by certiorari before the South Carolina Supreme Court." *Id.* at *4. It further expressed concern about "whether [Folkes] received proper consultation on his appeal rights from an attorney following the decision

7

of the South Carolina Court of Appeals." *Id.* Accordingly, it directed that Folkes be appointed counsel and that both parties file supplemental briefs addressing seven additional "issues and questions" J.A. 114, "raised by this [third] Ground," 2020 WL 728698, at *1.

After reviewing the supplemental briefing, the magistrate judge again recommended granting summary judgment to the State, but the district court concluded otherwise and granted the § 2254 petition. *See Folkes*, 2021 WL 62577, at *1, *10. The district court's opinion characterized Folkes' third ground for relief as "assert[ing] a claim for ineffective assistance of appellate counsel from the time of the adverse decision of the South Carolina Court of Appeals on September 24, 2010[,] until the issuance of remittitur on October 18, 2010." *Id.* at *4.[4] And while it agreed with the state PCR court that counsel was not ineffective for failing to *file* a petition for rehearing or certiorari—the ground Folkes actually raised to the state PCR court and in his § 2254 petition—it faulted the state PCR court for limiting its analysis to that issue. In the district court's view, the state PCR court should have addressed appellate counsel's duties and performance "in the immediate post-decision period when the appeal remained before the Court of Appeals and [Folkes] was given no notice of the adverse decision or of his right to seek further appellate review." *Id.* at *9.

---

[4] The remittitur returns the case from the appellate court to the trial court. Under South Carolina's Rules of Appellate Practice, parties have fifteen days after the filing of the court of appeals' decision to file a petition for rehearing. S.C. R. App. Ct. 221(a). Once that period has elapsed, the remittitur, containing a copy of the judgment of the appellate court with the seal and signed by the clerk of the court, is sent to the trial court. *Id.* R. 221(b).

Undertaking *de novo* review of this broader claim, the district court determined that Folkes had been deprived of effective assistance because counsel had not informed him of the state court of appeals' adverse decision or of his right to further appellate review, and—in the September 2010 letter—misinformed him about the status of his case and appellate rights. The district court also concluded that Folkes suffered prejudice because the record supported the conclusion Folkes would have timely petitioned for rehearing and certiorari. Lastly, the court concluded the above problems occurred at a critical stage of the direct appeal, *i.e.*, at a time when Folkes was entitled to the effective assistance of appointed counsel. For these reasons, the court granted the § 2254 petition and directed the State to reinstate Folkes' right to discretionary appellate review of the court of appeals' adverse decision, though it left the precise mechanism for compliance to the state court's prerogative. *Id.* at *8–10. Thereafter, the district court stayed relief pending a decision in this appeal.

The State noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II.

We review *de novo* the district court's grant of § 2254 relief, *Horner v. Nines*, 995 F.3d 185, 197 (4th Cir. 2021), though as explained in greater detail below, AEDPA greatly circumscribes that de novo review, *see Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129–30 (4th Cir. 2016).

On appeal, Folkes repeats the reasoning of the district court to defend its grant of habeas relief. Namely, he asserts the third ground of his § 2254 petition fairly implied a

9

claim that his court-appointed counsel on direct appeal provided him ineffective assistance of counsel by failing to consult with him regarding the decision of the South Carolina Court of Appeals in that appeal and his right to petition for rehearing in that court, which was a necessary prerequisite to petitioning the South Carolina Supreme Court for certiorari. He further posits that, on the merits, Ms. Robinson's failure to inform him that his appeal had been decided and of his discretionary appeal rights violated his Sixth Amendment right to counsel.

We disagree. Even when liberally construing Folkes' *pro se* § 2254 petition, Ground 3 did not adequately plead a failure to consult claim. That pleading inadequacy cannot be excused by asserting that an ineffective assistance of counsel claim premised upon counsel's failure to *file* a discretionary appeal necessarily implies that counsel was also deficient in failing to inform her client of the results of the direct appeal or to consult with him regarding the opportunity to file such a discretionary appeal. But even if we accepted that erroneous premise—as the dissenting opinion does—it fails on the merits. Accordingly, we reverse the district court's judgment.

III.

By design, AEDPA reinforces the long-held recognition that "[f]ederal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quoting *Calderon v. Thompson*, 523 U.S. 538, 555–56 (1998)). Rather than operating as "a complete bar on federal-court relitigation of claims already rejected in

10

state proceedings," AEDPA imposes extensive limits on when a federal court is permitted to grant habeas relief to state prisoners and how a federal court is to review claims presented in a § 2254 petition. *Id.* at 102; *Winston v. Pearson*, 683 F.3d 489, 498 (4th Cir. 2012) ("To effectuate a regime that embraces federalism in the habeas realm, AEDPA carefully circumscribes federal review of the habeas claims of state prisoners.").

We begin with a principle even more foundational than AEDPA's extensive limits on federal review of a state prisoner's habeas claims: a federal court reviews only the claims presented in the § 2254 petition. *See Harrison v. Warden, Md. Penitentiary*, 890 F.2d 676, 679 (4th Cir. 1989) (declining, pre-AEDPA, to consider a new argument "not raised in the habeas petition filed with the district court").[5] AEDPA provides that a state prisoner can file for federal habeas corpus solely "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). While each § 2254 petition must contain the overarching assertion of custody in violation of federal law, it must also contain specifically "asserted grounds for relief," otherwise termed as "issues" or "claims." *Samples v. Ballard*, 860 F.3d 266, 273 (4th Cir. 2017).

Both AEDPA and the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Corpus Rules") provide "that different grounds for relief are

_____

[5] Under AEDPA, a petitioner is required to obtain a certificate of appealability showing that he has satisfied certain benchmarks before obtaining appellate review of a district court's denial of habeas relief. The Court is then limited to considering "the specific issue or issues" that were granted in a certificate. 28 U.S.C. § 2253(c)(3); *see also* Fed. R. App. P. 22. This case presents a State appeal, so no certificate of appealability was issued. And, as discussed in the analysis that follows, this case also presents the rare case in which the district court rather than the petitioner supplied the grounds justifying habeas relief.

treated as different claims," *Samples*, 860 F.3d at 274, and that petitioners must "state the facts supporting each ground," *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Habeas Corpus R. 2(c)). Unlike most federal civil proceedings, which require that a complaint provide only "fair notice of what the plaintiff's claim is and the grounds upon which it rests," "Habeas Corpus Rule 2(c) is more demanding." *Mayle*, 545 U.S. at 655 (citation omitted). That rule requires petitions to "'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Id.* (quoting Habeas Corpus R. 2(c)); *see also* Habeas Corpus R. 4 advisory committee's note ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (citation and internal quotation marks omitted)). As the Supreme Court has noted, "[i]n the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important." *Mayle*, 545 U.S. at 655 (quoting Habeas Corpus R. 2(c) advisory committee's note). For that reason, "the model form available to aid prisoners in filing their habeas petitions" cautions that the petition must contain *all* grounds for relief being challenged and "state the facts that support each ground." *Id.* In addition, it warns that failure to comply may bar the petitioner "from presenting additional grounds at a later date." *Id.*

Case law bears witness that each ground for relief must be tied to a specific factual basis supporting that claim. This leads to the unremarkable conclusion that a petitioner may

assert multiple *claims* based on the same legal theory (*e.g.*, IAC, *Brady*[6] violations, actual innocence) with each claim connected to different acts or omissions by counsel. *See, e.g.*, *Porter v. Zook*, 898 F.3d 408, 434–37 (4th Cir. 2018) (analyzing different factual grounds as separate IAC claims); *Moore v. Hardee*, 723 F.3d 488, 495–500 (4th Cir. 2013) (same); *Basden v. Lee*, 290 F.3d 602, 616–19 (4th Cir. 2002) (same); *Baker v. Corcoran*, 220 F.3d 276, 293–97 (4th Cir. 2000) (same). At all times, the petitioner is responsible for identifying the allegedly deficient performance that the federal court is to review. And once the petitioner has identified specific conduct in his petition, he is constrained to rely only on that conduct.

Our discussion in *Samples* illustrates this point. The issue presented there required us to address whether a petitioner's reliance on new factual bases for an IAC claim set out new claims or were merely new arguments in support of previously raised claims.[7] In his prior filings, the petitioner had "claimed ineffective assistance of counsel based on an incomplete voir dire, permitting the jury to be informed that [he] was a convicted felon . . . , failure to propose certain limiting instructions, and failure to ensure that defense witnesses would not appear before the jury in prison garb." 860 F.3d at 275. But the petitioner later expanded his arguments to assert ineffective assistance based on "a freestanding claim [that] state habeas counsel" was ineffective and that trial counsel was ineffective based on

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] The specific question presented was whether a district court was required to consider *de novo* "claims raised for the first time in objections to a magistrate judge's proposed findings and recommendations." 860 F.3d at 268.

"six acts of omission." *Id.* In concluding the petitioner was asserting these new *claims*, we observed that his prior "express reliance on the[] four claims of ineffective assistance of counsel are to the exclusion of other claims of ineffective assistance of counsel." *Id.* Because, consistent with the Habeas Corpus Rules noted above, the petitioner had identified discrete facts constituting the alleged IAC, we made clear those alone were the claims he had put forward in his § 2254 petition. His ability to rely on a different factual basis for an IAC claim would be governed—and limited—by AEDPA and other applicable rules.[8]

These principles restricting a petitioner's advocacy throughout the § 2254 proceeding apply equally to a court's adjudication of that proceeding. Nothing authorizes a district court to expand or contract a petitioner's claim *sua sponte*. Instead, the court must consider claims as they are presented in the petition, reviewing them under the applicable standard. A court that alters the nature of a petitioner's claim, and grants habeas relief on

---

[8] For example, Federal Rule of Civil Procedure 15 governs when and how § 2254 petitioners may amend their pleadings, and § 2254(b)(1)(A) bars § 2254 petitioners from raising a claim without first exhausting their state court remedies as to each. Subject to limited exceptions, both rules impose exacting standards that bar petitioners from altering the factual basis for their claims between state and federal habeas proceedings and during the course of their § 2254 proceeding. *See, e.g.*, Fed. R. Civ. P. 15(c)(1) (discussing when amended pleadings "relate back" to the original filing to ensure their timeliness); *Mayle*, 545 U.S. at 655–63 (discussing the interplay between § 2254's one-year limitations period and Rule 15's provisions regarding amending pleadings); *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (reiterating that to exhaust state court remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues," "[a]nd this opportunity must be given by fairly presenting to the state court *both the operative facts* and the controlling legal principles associated with each claim" (emphasis added) (internal quotation marks and citation omitted)).

14

that different ground, crosses the line between jurist and advocate. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (admonishing district courts from "conjur[ing] up questions never squarely presented to them" by *pro se* litigants, because "requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff . . . would transform the district court from its legitimate advisory role to the improper role of an advocate"). A court acting in this manner also bypasses AEDPA's framework, thus allowing a petitioner to do indirectly what the foregoing principles barred the petitioner from doing directly. *Cf. Shoop v. Hill*, 139 S. Ct. 504, 507–09 (2019) (per curiam) (vacating award of § 2254 relief after concluding the court of appeals failed to limit review to the proper AEDPA standards when the petitioner originally briefed his claim as warranting relief under § 2254(d)(2), but the court ordered supplemental briefing on a case that post-dated the state PCR court's decision and then relied extensively on the new case and briefing to support relief under § 2254(d)(1)).

Courts of appeals have expressly recognized the district court's duty to consider only the specific claims raised in a § 2254 petition. *Ellis v. Raemisch*, 872 F.3d 1064, 1090–94 (10th Cir. 2017) (reversing a district court's judgment granting § 2254 relief when the attorney conduct serving as the basis for an IAC claim was raised *sua sponte* and differed from the conduct that formed the basis for the originally presented and exhausted claim); *Bracken v. Dormire*, 247 F.3d 699, 702 (8th Cir. 2001) ("Earlier cases have made clear that 'we will not consider issues or grounds for relief that were not alleged in a prisoner's habeas petition.'" (quoting *Frey v. Schuetzle*, 78 F.3d 359, 360 (8th Cir. 1996)); *Frey*, 78 F.3d at 360–61 ("[D]istrict courts must be careful to adjudicate only those claims upon which the

15

petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief."). Because it follows from both the general habeas principles discussed previously as well as our long-standing recognition that plaintiffs—not the district court—typically determine the case for decision, we adhere to this course in the context of a district court's duty when considering the grounds for relief presented in a § 2254 petition. *See, e.g.*, *Beaudett*, 775 F.2d at 1278; *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir. 1982) (affirming the district court's conclusion, pre-AEDPA, that a § 2254 petitioner had "waived" the right to raise a new claim during argument before the magistrate because the allegations in his habeas complaint did not identify the factual basis for that claim); *cf. United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405–06 (4th Cir. 2013) (discussing cases relying on the principle that the plaintiff is the "master of his complaint" and thus responsible for describing his claims, identifying the defendants, and otherwise crafting the case he presents to the district court for decision).[9]

---

[9] The Supreme Court's holding in *Jennings v. Stephens*, 574 U.S. 271 (2015), bolsters this conclusion. There, the Court considered the circuit split that had developed as to whether a § 2254 petitioner had to obtain a certificate of appealability when he was the appellee on appeal and wanted to defend the judgment on alternative grounds the district court had rejected. *Id.* at 273. In holding that a petitioner-appellee did not have to obtain a certificate of appealability to "defend[] his judgment," the Court admonished that he would be "confined to those alternative grounds present *in the record*: he may not simply argue *any* alternative basis, regardless of its origin." *Id.* at 279. Once again, case law emphasized the federal courts' duty to guard against new bases of decision throughout the state habeas petitioners' federal proceedings.

Applying those principles here, Ground 3 of Folkes' § 2254 petition referred to appellate counsel's alleged ineffective assistance and stated a single fact supporting that claim—"failing to file a Petition for Rehearing in the Court of Appeals." J.A. 28. He later characterized the claim using slightly different surrounding language, but again pointed unambiguously and exclusively to the sole act of failing to file the petition for rehearing:

> Did the lower court err denying [Folkes] relief where the record below demonstrates that he meet [sic] his burden of proof concerning his allegation that his Sixth and Fourteenth Amendment right to effective assistance of appellate counsel was violated on direct appeal *where Appellate Counsel failed to file a Petition for Rehearing in the Court of Appeals* thereby depriving [him] of his right to seek certiorari in the Supreme Court of South Carolina?

J.A. 31 (emphasis added). These were, verbatim, the issue statements he presented in his state PCR application and subsequent petition for certiorari review of the state PCR court decision. *Compare* J.A. 28, *with* J.A. 679, *and* J.A. 31, *with* J.A. 833. Folkes' "express reliance on [this one] claim[] of ineffective assistance of [appellate] counsel [is] to the exclusion of other claims of ineffective assistance of [appellate] counsel." *Samples*, 860 F.3d at 275.

Instead of adjudicating the claim set out in the § 2254 petition, the district court *sua sponte* required additional briefing on conduct encompassing other components of representation. The facts supporting the district court's new claims involved acts of omission and commission, looking beyond the only act identified in the § 2254 petition— counsel's "fail[ure] *to file* a Petition for Rehearing in the Court of Appeals." J.A. 28 (emphasis added). Specifically, the district court granted relief based on the following conduct: failing to advise Folkes of the South Carolina Court of Appeals' decision, failing

17

to consult with him about his opportunities to seek further discretionary appellate relief, and sending a form letter that incorrectly advised Folkes that he had exhausted his right to state relief. These claims all require looking at different conduct over a broader period of time and under different caselaw than the specific claim Folkes raised in his § 2254 petition.

Perhaps most illuminating for purposes of understanding the district court's alteration of the factual basis for an IAC claim is its express recognition that had the factual basis for Folkes' claim been solely whether appellate counsel was ineffective for failing to file a petition for rehearing, he would not be entitled to relief. In that regard, the court stated:

> The PCR court and [the State] have attempted to posit this case as only raising the question of whether [Folkes] had a constitutional right to have his counsel file a petition for rehearing to the South Carolina Court of Appeals and for certiorari to the South Carolina Supreme Court. *If this were the sole issue before the Court, the PCR court and [the State] would be correct.* What the PCR court did not address, and [the State] seeks to avoid, are the duties of appellate counsel during the period post an adverse decision while the appeal is still pending on direct appeal before the appellate court. . . . [F]rom the issuance of the adverse decision on September 24, 2010[,] until the filing of the remittitur on October 18, 2010[,] appellate counsel had the duty to advise the client of the adverse decision and of his right to seek further appellate review.

J.A. 158 (emphasis added) (internal citation omitted).

Tellingly, the district court pointed to no basis in law or fact for its declaration that an IAC claim based solely on failure to file a petition for rehearing necessarily encompasses additional conduct that occurs from the time the court of appeals issued its decision to the remittitur. Notwithstanding whatever additional duties appellate counsel may have had during the relevant timeframe, none of those were the solitary duty Folkes'

18

petition put before the district court. As the earlier recited AEDPA principles make clear, courts can no more alter the factual basis for a claim simply because other alleged duties may have arisen after issuance of an appellate decision than they can alter the factual basis for a claim because the alleged duties arose during trial. *See Samples*, 860 F.3d at 275. Here, the act of not filing a petition for rehearing is distinct from the other conduct the district court expanded its review to encompass, and then relied on to grant relief. Federal courts are not responsible for identifying the factual basis for a petitioner's claims; the petitioner is. And, as Folkes' § 2254 petition makes clear, appellate counsel's failure to file a petition for rehearing *was* his sole IAC claim.

The district court's conclusion that the state PCR court misunderstood the full scope of Folkes' claim is not supported by the record. To the contrary, the state PCR court addressed the precise factual circumstance Folkes presented as the issue before it. Moreover, Folkes—*who was represented by counsel throughout the state PCR proceedings*—did not file a motion to reconsider in the state PCR court or assert in his subsequent petition for certiorari to the Supreme Court of South Carolina that the state PCR decision mistakenly narrowed either the issue he was presenting or the factual basis to support his claim. The sole issue identified for the state PCR courts asserted that appellate counsel's performance was deficient for failing to *file* the petition for rehearing. Only after Folkes' § 2254 petition was filed did his claim adopt a different hue. And even then, that was only after the district court required Folkes to respond to its *sua sponte* questions about the facts and law surrounding the period following the filing of the South Carolina Court

19

of Appeals' decision. Before that time, Folkes' claim rested on the failure to file a petition for rehearing because that omission prevented him from filing a petition for certiorari.

That Folkes filed his § 2254 petition *pro se* does not alter this conclusion. To be sure, *pro se* filings are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but that does not give a court license to look beyond the claim presented. *Beaudett*, 775 F.2d at 1278; *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (stating that liberal construction of a *pro se* litigant's pleadings "does not mean overlooking the pleading requirements"); *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) ("[L]iberal construction does not require us to attempt to 'discern the unexpressed intent of the [petitioner],' but only to determine the actual meaning of the words used in the [pleading]." (citation omitted)). Here, there is no specialized procedural or substantive legal barrier that would warrant reading "filing a petition for rehearing" to encompass any other acts. *See Bing*, 959 F.3d at 618 (observing that the court's conclusions did not arise from the filing using "unsophisticated language or [its] failure to adhere to formalities"). That is particularly true here because Folkes' *pro se* § 2254 petition used the precise issue statements from his state PCR application and subsequent petition for certiorari to the Supreme Court of South Carolina, *language crafted when he was represented by counsel*. He included no additional argument in support of his IAC claim. Thus, while Folkes' § 2254 petition was filed *pro se*, the language he submitted to the district court that identified the issue before the court was prepared by counsel.

By considering, and then granting relief based on, a different factual ground than that originally presented in Folkes' § 2254 petition, the district court considered a claim

20

that Folkes did not raise. In so doing, it permitted Folkes to circumvent AEDPA's framework for how federal courts are to review § 2254 claims raised by state prisoners.

IV.

The above analysis of the generally applicable principles for understanding what "claims" are raised in a § 2254 petition is alone sufficient to reverse the district court's judgment. But further discussion is warranted given the specific nature of Folkes' claim and the dissenting opinion's contrary understanding of its scope. In particular, the dissent would hold that Folkes' claim both encompassed and entitled him to habeas relief on the additional issues decided by the district court. In reaching both conclusions, the dissenting opinion draws on principles applicable when considering the right to counsel in transitioning from conviction in the trial court to an initial appeal as of right. Those principles have no applicability where the setting is the transition from an appellate court's decision in an initial appeal as of right to a subsequent, discretionary appeal in the same or another appellate court. Moreover, grafting them into this context runs directly counter to the Supreme Court's holdings that specifically address the pursuit of a subsequent, discretionary appeal.[10] Before discussing how the dissenting opinion's mistaken view

---

[10] We use the terms "direct appeal" and "initial appeal as of right" interchangeably. They refer to the proceeding following a defendant's conviction and sentence in the trial court that operates as an error correction for the proceedings in that court.

As its individual parts suggest, the phrase "subsequent, discretionary appeals" refers to any additional appellate proceedings beyond the initial appeal of right. They are secondary (or later) reviews of the original appellate court's review of the proceedings in (Continued)

21

taints its analysis of both the threshold issue of the scope of Folkes' claim and its merits analysis of that claim, we first review the applicable Supreme Court case law.

A.

1.

The Sixth Amendment guarantees not just a right to counsel, but to the effective assistance of that counsel in all criminal prosecutions. The Supreme Court has long recognized that counsel "plays a crucial role in the adversarial system . . . since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (citation and internal quotation marks omitted). Indeed, the right to counsel "protect[s] the fundamental right to a fair trial." *Id.* at 684. The right to counsel is meaningless without "the right to *the effective assistance of* counsel." *Id.* at 686 (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Accordingly, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* On that basis, the *Strickland* Court developed the familiar two-part test for establishing IAC claims.

---

trial court. And they are discretionary in that the court being appealed to plays a gatekeeper function in deciding whether to consider the appeal at all. Examples include a petition for rehearing in the same court that heard the direct appeal or a petition for writ of certiorari to a higher court such as the Supreme Court of the United States.

The constitutional right to counsel—and to the effective assistance of said counsel—extends to a "first appeal as of right," when one is provided. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *see id.* at 392–400 (explaining why the Sixth Amendment guarantees this right). Briefly, the Supreme Court has recognized that "if a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* at 393 (cleaned up); *see also Douglas v. California*, 372 U.S. 353, 357 (1963) ("[W]here the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor."). However, counsel's role significantly differs at the appellate stage. At trial, counsel acts "as a shield to protect [a defendant] against being 'haled into court' by the State and stripped of his presumption of innocence." *Ross*, 417 U.S. at 610–11. By contrast, during the initial appeal as of right, counsel's role is to act "as a sword to upset the prior determination of guilt." *Id.* And when undertaking that swordsman task, appellate counsel must provide *effective* representation, or else the right to counsel during an initial appeal as of right "would be a futile gesture." *Evitts*, 469 U.S. at 397.

However, the Supreme Court has drawn a bright line regarding the constitutional right to counsel between an initial appeal as of right and subsequent, discretionary appeals. Defendants "do[] *not* have a constitutional right to counsel to pursue discretionary state appeals or applications for review in [the Supreme Court]." *Wainwright*, 455 U.S. at 587 (citing *Ross*, 417 U.S. at 612) (emphasis added). In explaining this division, the Supreme

23

Court first noted that the Constitution guarantees the right to counsel in the *initial appeal as of right* because, otherwise, indigent defendants would be "denied meaningful access to the appellate system because of their poverty," *Ross*, 417 U.S. at 611, given that "the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits," *Evitts*, 469 U.S. at 393. During a subsequent, discretionary appeal, however, the assistance counsel provides lessens, as does the "handicap borne by the indigent defendant." *Ross*, 417 U.S. at 616. The Supreme Court has reiterated that the Sixth Amendment does not guarantee the right of counsel to "assist[] [a defendant] in every conceivable manner at every stage in the proceeding," but instead "assure[s] the indigent defendant an adequate opportunity to present his claims fairly," a goal that is accomplished by guaranteeing the assistance of counsel in preparing the initial appeal as of right. *Id.* at 616.

And because no similar right exists during a subsequent, discretionary appeal, the Supreme Court has consistently held that IAC claims based on conduct related to that stage of the appellate process are not cognizable. *E.g.*, *Wainwright*, 455 U.S. at 587–88. In short, when a defendant "has no constitutional right to counsel" for a particular proceeding, "he [cannot] be deprived of the effective assistance of counsel by his retained counsel's" conduct related to that proceeding. *Id.*

2.

The significant difference between the constitutional right to counsel in an initial appeal and the absence of such a right in a subsequent, discretionary one is particularly evident in how the Supreme Court has analyzed IAC claims based on counsel's failure to

24

*file* for each type of appeal. For example, when confronted with an IAC claim based on counsel's failure to file an appeal in an initial appeal as of right when it is unknown whether the defendant requested him to do so, the Supreme Court has stated that this claim requires courts to consider whether trial counsel consulted with the defendant about his direct appeal rights. But when confronted with an IAC claim based on counsel's failure to file a subsequent, discretionary appeal, the Supreme Court has simply rejected such claims based on the absence of any right to counsel at that stage of the appellate process.

Because the Constitution "guarantees a criminal appellant pursuing a *first appeal as of right* certain minimum safeguards," *Evitts*, 459 U.S. at 392 (emphasis added), the Supreme Court "ha[s] long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" for purposes of establishing an IAC claim, *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The Supreme Court was confronted in *Flores-Ortega* with a nuanced question in the context of the initial appeal as of right: whether counsel was "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other." *Id.* The Supreme Court stated that this question was "best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. It used "the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The two questions were tethered together, in the Court's reasoning, because when counsel has consulted with the defendant, then courts can better determine whether counsel performed unreasonably by

25

failing to file a notice of appeal by looking to whether counsel "follow[ed] the defendant's express instructions" after that consultation. *Id.* But if counsel failed to consult, then courts had to consider "whether [the] failure to consult with the defendant itself constitute[d] deficient performance." *Id.*

Rather than creating a bright-line rule that counsel has a duty to consult in the context of a direct appeal, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. *Flores-Ortega* thus established the interconnectedness of a claim that counsel was ineffective for failing to file a *direct appeal* and counsel's duty to consult about a defendant's ability to pursue that appeal with the assistance of counsel.

In stark contrast to the approach it adopted in *Flores-Ortega*, when confronted with an IAC claim based on *appellate counsel's* failure to file for timely subsequent, discretionary review, the Supreme Court outright rejected that claim because no right to counsel existed in that next stage of the appeals process. *Wainwright*. 455 U.S. at 587–88. Specifically, after an intermediate appellate court affirmed a state petitioner's convictions, appellate counsel filed a petition for writ of certiorari to the state supreme court, which the court dismissed as untimely. *Id.* at 586. The state petitioner alleged an IAC claim based on appellate counsel's failure to file a timely petition. *Id.* at 586–87. It was not disputed that review by the state supreme court was discretionary. *Id.* at 587. Citing *Ross*, the Supreme Court unequivocally held that because the state petitioner "had no constitutional right to

26

counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." *Id.* at 587–88.

B.

1.

This Supreme Court precedent demonstrates why the district court and the dissent are incorrect in positing that the ground for relief Folkes asserted—an IAC claim based on the failure to file for discretionary review—encompassed additional claims. In *Wainwright*, the Supreme Court was confronted with a claim identical to the one Folkes raised, which it analyzed and rejected. It did not view that claim as actually presenting or requiring discussion of any additional ones, including any duty to consult. *Wainwright* governs our analysis here and precludes the one adopted by the dissent.

To reach a different conclusion, the dissent relies principally on *Gordon v. Braxton*, 780 F.3d 196, 200–02 (4th Cir. 2015), in which we held that an IAC claim based on *trial counsel's failure to file a direct appeal of right* necessarily encompassed the issue of whether trial counsel was ineffective for failing to consult with the defendant about his ability to pursue *an initial appeal as of right*. As should be clear from our earlier discussion, *Gordon* is simply a straightforward application of the Supreme Court's instruction in *Flores-Ortega*.

In *Gordon*, a § 2254 petitioner had asserted in his state habeas proceedings that trial counsel had rendered ineffective assistance by failing to file notice of an initial appeal as of right. 780 F.3d at 199. The state habeas court found that petitioner "had not shown deficient performance because [he] had merely inquired about an appeal, not directly

27

requested one." *Id.* at 200. Its analysis went no further and denied relief. The petitioner's § 2254 petition argued counsel was ineffective for both "failing to file a notice of appeal and for not consulting with him about an appeal." *Id.* at 199. The district court dismissed the § 2254 petition "based on the state court's reasoning." *Id.* at 200.

On appeal to this Court, the Commonwealth argued that the petitioner failed to exhaust his state remedies as to the failure-to-consult claim because he had not "identif[ied] it as a separate claim." *Id.* at 200. We disagreed, holding that the petitioner had fairly presented "both the operative facts and the controlling legal principles . . . to the state court." *Id.* at 201 (citation omitted). We pointed out that the state court's finding that the petitioner "never expressly requested an appeal" did not end the analysis because the fact that the petitioner "asked [counsel] is there anything else we can do from this point," "indicat[ed] his interest in appealing which, at a minimum, triggered counsel's duty to consult." *Id.* Put another way, although the state habeas court concluded that the petitioner had not specifically instructed counsel to file a notice of appeal, it failed to undertake the "antecedent" inquiry *Flores-Ortega* directed courts to consider when assessing an IAC claim based on *trial counsel's* failure to file a direct appeal when the defendant had not "clearly conveyed his wishes one way or the other." 528 U.S. at 478. Importantly, we further observed that the state-court filings referenced *Strickland*, *Flores-Ortega*, and *Miles v. Sheriff*, 581 S.E.2d 191 (Va. 2003), three cases assessing ineffective assistance of counsel claims in which the petitioner "allege[d] that they were denied their right to [a direct] appeal because of counsel's ineffective assistance." *Gordon*, 780 F.3d at 201. Based on *Flores-Ortega*'s specific recognition that the duty to file a direct appeal and the duty to

28

consult about that appeal "fall[] along a 'spectrum,'" we held that the petitioner had exhausted his state remedies as to both the failure-to-file and the failure-to-consult claims. *Id.* at 201–02 (quoting *Flores-Ortega*, 528 U.S. at 477).[11]

By treating *Gordon* with near-dispositive effect, the dissent unmoors that decision from its necessary context: the transition from trial proceedings to a direct appeal, throughout which a defendant has the right to counsel. Proceeding in that manner so elides the legally significant differences between that stage of proceedings and the stage at issue in this case, the transition from the direct appeal to a discretionary appeal, where the Supreme Court has drawn a bright line as to the constitutional right to effective counsel. The spectrum analysis from *Flores-Ortega* and *Gordon* simply does not apply with respect to Folkes' claim that counsel was ineffective for failing to file a subsequent, discretionary petition for rehearing. Nor does it follow from either of those decisions that all "failure to file" claims necessarily implicate counsel's earlier conduct (or lack thereof).

---

[11] The dissent observes that "[l]ike the petitioner in *Gordon*, Folkes cited to *Strickland*" in his state PCR filings. Diss. Op. 60. But that hardly demonstrates exhaustion of remedies. *Strickland* established the generic standard for ineffective assistance of counsel but says nothing about the specific context of ineffective assistance of counsel for failing to file a discretionary appeal *or* failing to consult about any next steps in the proceedings. By contrast, *Gordon* observed that the petitioner's state habeas claim had cited not just *Strickland*, but also *Flores-Ortega* and a related state case that identified the specific claim alleged—ineffective assistance of counsel for failure to file a notice of direct appeal—and also discussed why that claim necessarily raised the issue of counsel's duty to consult in that context. Neither Folkes' § 2254 petition nor his state PCR filings similarly cited case law reflecting any interconnectedness between a duty-to-file claim and a duty-to-consult claim in the context of discretionary appeals.

Moreover, *Wainwright precludes* applying the reasoning of *Flores-Ortega* to the context presented here. When confronted with the question of whether appellate counsel was ineffective for failing to file a petition for a subsequent, discretionary appeal, the Supreme Court limited its analysis to that discrete question without conducting the sort of spectrum analysis it used in *Flores-Ortega*. We have no authority to do otherwise.

These distinct approaches to IAC claims based on the initial appeal as of right and subsequent, discretionary appeals make sense given that they arise in separate stages of the criminal proceedings, which the Constitution protects differently. Because the Constitution imposes a duty on trial counsel to file a direct appeal (1) when instructed to do so, and (2) sometimes even when not instructed to do so, bringing an IAC claim based on failure to file necessarily requires courts to consider trial counsel's consultation with the client about pursuing an initial appeal as of right. But because the Constitution imposes no duty on counsel to file a discretionary appeal—regardless of whether one is requested—analyzing that claim never implicates "antecedent" questions concerning consultation between counsel and the client. *Flores-Ortega*, 528 U.S. at 478. Accordingly, when a petitioner raises an IAC claim based on failure to file for a subsequent, discretionary appeal, that is the extent of the claim presented and the sole basis upon which habeas relief could be granted. In short, *Wainwright*—not *Flores-Ortega* or *Gordon*—answers the question of whether the claim raised in Folkes' § 2254 petition encompasses anything beyond a duty-to-file claim. And it answers the question with a clear "no."

30

2.

As the foregoing principles reflect, by alleging appellate counsel ineffective for failing to *file* a subsequent, discretionary appeal—the petition for rehearing, which was required to file a petition for certiorari (also a subsequent, discretionary appeal)—Folkes alleged a claim based solely on that conduct. That conclusion is the same under both the generally applicable principles for understanding the scope of a petitioner's § 2254 ground for relief discussed at the outset and the specific case law relevant to an IAC claim based on appellate counsel's conduct related to a subsequent, discretionary appeal. The district court erred in expanding the scope of Folkes' claim.

We need not remand the case for the district court to limit its review to this one issue, however, because the district court already addressed it. And it properly recognized that Folkes would not be entitled to habeas relief based on *Wainwright*'s holding that there is "no right to counsel for discretionary appellate review." *See Folkes*, 2021 WL 62577, at *9 (citing *Wainwright*, 455 U.S. at 587–88); *see also Ross*, 455 U.S. at 587–88. By concluding that the state PCR court's decision was correct, the district court necessarily concluded that Folkes could not satisfy § 2254's requirement of showing that the state PCR court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (emphasizing "the special importance of the AEDPA framework in cases involving *Strickland* claims" because *Strickland*'s "general standard[] [provides] a state court [with] even more latitude to reasonably determine that a defendant has not satisfied that standard" (citation omitted));

31

*Harrington*, 562 U.S. at 101–02 (discussing the differences between undertaking § 2254(d)(1)'s review of a state court's adjudication of an IAC claim and directly considering whether counsel's performance fell below *Strickland*'s standards).

As to this specific ground for relief, we agree with the district court's conclusion that the state PCR court did not act contrary to or unreasonably apply those principles when it concluded that Folkes could not assert an IAC claim based on counsel's failure to file a petition for rehearing because that stage of South Carolina's appellate process is purely discretionary. J.A. 802 (discussing *Douglas v. State*, 631 S.E.2d 542, 543–44 (S.C. 2006), which held that appellate counsel has no duty "to pursue rehearing and/or certiorari following the decision of the Court of Appeals in a criminal direct appeal" because that constitutes discretionary relief and that no claim of ineffective assistance of appellate counsel can be made against an attorney pursuing discretionary relief after a direct appeal); *see also Chalk v. Kuhlmann*, 311 F.3d 525, 528–29 (2d Cir. 2002) (holding that although state law required appointed counsel to file for discretionary appellate relief, no ineffective assistance of counsel claim could be asserted against counsel for defective performance related to that discretionary appeal because any such "failure would not violate any constitutional right"). Folkes was not entitled to § 2254 relief on the sole claim adequately alleged in his petition. Accordingly, we reverse the district court and remand for entry of an order denying Folkes' § 2254 petition.

C.

Even if the dissent is correct on the threshold question of what issues were part of Folkes' § 2254 petition, its substantive analysis of those claims is in error and thus warrants

a response. Because Folkes had no constitutional right to counsel regarding the petition for rehearing, he cannot allege an IAC claim based on a failure to consult about either the outcome of his direct appeal or his next steps in the state's discretionary appeals process. In short, a merits analysis of these additional unpled claims leads to the same conclusion: Folkes is not entitled to habeas relief. [12]

Both the district court and the dissent recognize that under Supreme Court precedent, appellate counsel would not have been required to *represent* Folkes in any proceeding for discretionary relief. Nor does either suggest that counsel would be required to discuss with Folkes the pros and cons of filing a petition for rehearing or preparing a petition that Folkes could then use to file—hence, the dissenting opinion's attempt to narrow the novel duty being crafted as a "duty to consult" that means something less than the duty to consult discussed in *Flores-Ortega*. *See* Diss. Op. 50 n.1 (defining its understanding of counsel's duty to "consult" about a subsequent, discretionary appeal to something narrower than *Flores-Ortega*'s description of it in the context of an initial appeal as of right). So framed, the dissent's formulation of appellate counsel's duty to consult rests on the faulty premise that Folkes had a constitutional right to have counsel inform him of

---

[12] The proper standard of review for such a claim presents multiple problems under AEDPA's framework. For purposes of this section, we will assume that review is *de novo* and that the dissent is correct that Folkes' state PCR petitions implicated both claims it enumerates (failure to file and failure to consult), but the state PCR courts failed to address the latter claim. *See Tice v. Johnson*, 647 F.3d 87, 105 (4th Cir. 2011) (recognizing that *de novo* review of a § 2254 claim is appropriate when the state court "did not address" an issue raised in a state habeas petition, so there are no state-court findings or conclusions to defer to in considering § 2254 relief).

two things: (1) the South Carolina Court of Appeals' decision; and (2) his opportunity to pursue further discretionary appeals.

But the Supreme Court has never held that appellate counsel has a constitutional duty to do either one. Applying Supreme Court precedent to the analysis, multiple circuit courts have held that no such duty to consult exists. Indeed, the dissent acknowledges this majority view in out-of-circuit authority and instead adopts a position broader than any of our sister circuits follows. *See* Diss. Op. 70–72. Adopting the dissenting opinion's substantive view would have us create a circuit split in the first instance, and would further put us in plain tension with the Supreme Court's relevant case law. Even were we to reach the merits of the issues the district court and dissenting opinion concluded to be part of Folkes' § 2254 petition, we would conclude that Folkes is not entitled to relief because the Constitution does not impose the duties both opinions impose on appellate counsel.

1.

While state rules, ethical canons, or other sources may impose a duty on counsel to inform their clients of the decision of a direct appeal, the Constitution does not. Instead, as the Fifth Circuit has recognized, "[t]he constitutionally secured right to counsel ends when the decision by the appellate court is entered." *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002). This conclusion rests squarely on the Supreme Court's reasoning about the right to effective counsel in the first instance.

When it first recognized the constitutional right to counsel in the first appeal as of right, the Supreme Court framed the basis in terms of the necessary value counsel adds in presenting the case to the appellate court for its review. *Douglas*, 372 U.S. at 357 ("[W]here

34

the merits of the one and only appeal an indigent has as of right are *decided without benefit of counsel*, we think an unconstitutional line has been drawn between rich and poor." (emphasis added)); *see also id.* at 356 (observing that its holding was not concerned with questions "that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been *presented by a lawyer and passed upon by an appellate court*" (emphasis added)).

The Supreme Court's subsequent discussions of the right to appellate counsel similarly address the assistance counsel provides in *preparing* and *presenting* the defendant's appeal for review by the court. *Evitts*, 469 U.S. at 393–94 ("[T]he services of a lawyer will for virtually every layman be necessary *to present* an appeal in a form suitable for appellate consideration on the merits. . . . [Counsel] must be available to assist in *preparing and submitting a brief* to the appellate court, and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." (emphases added) (internal citations omitted)); *Ross*, 417 U.S. at 610–11 (describing appellate counsel's constitutional role "as a sword to upset the prior determination of guilt"); *Swenson v. Bosler*, 386 U.S. 258, 259 (1967) (per curiam) ("The assistance of appellate counsel in *preparing and submitting a brief* to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript may well be of substantial benefit to the defendant." (emphasis added)). This constitutionally guaranteed role has been served in its entirety once the appellate court issues its decision.

Indeed, it is precisely because the appeal has already "been presented by a lawyer and passed upon by an appellate court" that the Supreme Court has concluded no further right to counsel exists beyond the initial appeal as of right. *Ross*, 417 U.S. at 614 ("[The defendant] . . . received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals. Thus, prior to his seeking discretionary review in the State Supreme Court, his claims had 'once been presented by a lawyer and passed upon by an appellate court.'" (quoting *Douglas*, 372 U.S. at 356)); *id.* at 616 ("The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant *an adequate opportunity to present his claims fairly* in the context of the State's appellate process." (emphasis added)); *see also Coleman v. Thompson*, 501 U.S. 722, 755–56 (1991) (holding a state criminal defendant had no "constitutional right to counsel on appeal from the state habeas trial court judgment" because he had already "had his one and only appeal" during which counsel had assisted in providing him with "an adequate opportunity *to present* his claims fairly in the context of the State's appellate process" (cleaned up) (emphasis added)); *Anders v. California*, 386 U.S. 738, 744 (1967) (explaining that appellate counsel's "role as advocate requires that he *support his client's appeal* to the best of his ability" and that this role is satisfied by, *inter alia*, notifying the court that she has found no meritorious issues for appeal "accompanied by a brief referring to anything in the record that might arguably support the appeal").

36

Supreme Court case law thus supports the conclusion that the constitutional right to appellate counsel is satisfied in advance of the appellate court's decision and that counsel's role ends upon issuance of that decision. As the Fifth Circuit has explained, citing the Supreme Court's decision in *Ross*: "[t]he constitutionally secured right to counsel ends when the decision by the appellate court is entered." *Moore*, 313 F.3d at 882.

The dissent adopts the contrary view partially espoused by the Sixth Circuit, concluding that the right to appellate counsel encompasses a duty to "notify a defendant of the outcome of his direct appeal." Diss. Op. 71. While this may be the ethically appropriate course, it is not a constitutionally required one. Neither the dissent's nor the Sixth Circuit's reasoning is persuasive otherwise and finds no support from the Supreme Court.

In *Smith v. Ohio Department of Rehabilitation & Corrections*, 463 F.3d 426, 432–33 (6th Cir. 2006), the court held that a § 2254 petitioner's procedural default of a claim was excused because appellate counsel had rendered ineffective assistance by "fail[ing] to notify him promptly of the [state] Court of Appeals decision denying his claims," which led to his untimely filing of a notice of appeal to the state supreme court. The court recognized that "[t]here can be a constitutional claim of ineffective assistance only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment." *Id.* at 433. But the court declared that the petitioner's "claim does not relate to his lawyer's performance regarding" discretionary relief, but rather to "[counsel's] representation . . . during his direct appeal." *Id.*

To support its view, the Sixth Circuit failed to consider any of the foregoing principles concerning why the right to counsel on a direct appeal exists. Instead, it relied

on inapposite principles from *Flores-Ortega* and similar cases governing *trial counsel*'s duties to prepare a defendant to take an initial appeal as of right. *Id.* at 433–35. For the reasons already detailed, that's a false analogy to the end of a first appeal of right and the initiation of any discretionary appeals. The constitutional basis necessitating client–counsel communication to facilitate the defendant's decision whether to take that initial appeal as of right—during which time the right to counsel continues unabated—does not exist *after* the decision on direct appeal. What remains is simply the Sixth Circuit's *ipse dixit* declaration that appellate counsel's responsibilities do not end "the moment the court of appeals hands down its decision." *Id.* at 433. Therefore, nothing in *Smith* casts doubt on the proper application of the Supreme Court's relevant case law discussed earlier.

In consequence, even if Folkes' § 2254 petition had raised a claim of ineffective assistance of counsel based on appellate counsel's failure to inform him of the outcome of his direct appeal of right, it would not support the granting of habeas relief. Folkes' claim had "once been presented by a lawyer and passed upon by an appellate court," which fulfilled all constitutional duties of his counsel. *Douglas*, 372 U.S. at 356.

2.

The dissenting opinion's further view that Folkes' counsel had a duty to inform Folkes about the existence of his next, discretionary appellate options has no support in the case law of the Supreme Court or any court of appeals. The constitutional right to effective assistance of counsel does not extend to any attorney–client discussion about additional proceedings available to the client after the first appeal of right. Filing a petition for rehearing in the South Carolina Court of Appeals is a solely discretionary proceeding,

38

meaning the constitutional right of counsel does not extend to it. Accordingly, counsel's failure to consult with Folkes about it does not implicate his constitutional right to effective assistance of counsel.

Leaving the Sixth Circuit's approach for later, all other courts of appeals to consider similar claims have held that because the Constitution does not guarantee a right to effective assistance of counsel relating to a discretionary appeal, IAC claims are not cognizable based on appellate counsel's mistaken advice or failure to advise about an unsuccessful appellant's opportunities for subsequent, discretionary relief. For example, in *Jackson v. Johnson*, 217 F.3d 360, 364–65 (5th Cir. 2000), the Fifth Circuit rejected a defendant's claim that counsel was ineffective for failing to file—and failing to inform him of his right to file—a motion for rehearing of the direct appeal because that motion "come[s] after the appellate court has passed on the claims[] [and] there can be no question that the granting of a motion for rehearing lies entirely within the discretion of a court of appeals." The Fifth Circuit explained that under *Ross* and *Wainwright*, "a criminal defendant has no constitutional right to counsel on matters related to filing a motion for rehearing following the disposition of his case on direct appeal." *Id.* at 365.

For the same reasons, in *Pena v. United States*, 534 F.3d 92, 94–95 (2d Cir. 2008) (per curiam), the Second Circuit denied relief to a federal petitioner claiming ineffective assistance of appellate counsel "for failing to notify him of his right to file" a petition for writ of certiorari from the Supreme Court of the United States. Like Folkes, the petitioner testified he would have petitioned for a writ of certiorari if he had been aware of the ability to do so, and that appellate "counsel's failure to inform him of the opportunity 'denied his

39

right to have a lawyer prepare and submit a petition.'" *Id.* But the court rejected petitioner's argument that a duty to consult was part of the "right to the effective assistance of counsel on first-tier appeal"—its "last step"—rather than being "the first step of the subsequent discretionary appeal." *Id.* at 95–96 (quoting *Chalk*, 311 F.3d at 529). Calling that argument "ingenious, but wrong," *id.* at 96 (emphasis omitted) (quoting *Chalk*, 311 F.3d at 529), the Second Circuit recounted the previously discussed Supreme Court case law regarding the interconnectedness of IAC claims to the constitutional right to counsel and the different treatment of claims surrounding the initial appeal as of right and subsequent, discretionary appeals, *id.* at 95–96. In particular, the court observed that the right to counsel exists for an initial appeal as of right to protect a defendant from "the prejudice that might ensue from an improperly pursued initial appeal" in which a court adjudicates the merits of issues presented to it and "performs the role of 'error-correction.'" *Id.* at 95 (citation omitted). After the decision in the direct appeal, however, "the harm done by a certiorari petition drafted without the aid of an effective lawyer is unlikely to resemble" that level of prejudice and thus is not constitutionally required. *Id.* Accordingly, the court concluded that no IAC claim could be predicated on counsel's failure to inform the petitioner that he had the opportunity to pursue further, discretionary appeals. *Id.* at 96.

These courts of appeals decisions, among others, properly applied existing Supreme Court precedent and demonstrate why Folkes would not be entitled to habeas relief even if his claim encompassed his counsel's failure to consult with him about the availability of additional, discretionary appeals. *See also Ahumada v. United States*, 994 F.3d 958, 960–61 (8th Cir. 2021) (rejecting IAC claim based on counsel's failure "to communicate" about

40

the process for filing a petition for rehearing because "[t]here is no constitutional right to counsel for discretionary appeals" such as rehearing, so "[a habeas petitioner cannot claim ineffective assistance of counsel" for matters related to pursuing that relief); *Miller v. Keeney*, 882 F.2d 1428, 1430–33 (9th Cir. 1989) (holding that a petitioner could not establish an ineffective assistance of appellate counsel based on "incomplete" and possibly even constitutionally deficient advice about whether to pursue a subsequent, discretionary appeal because the "constitutional right to counsel . . . c[a]me to an end" once the decision issued in the initial, direct appeal).

The dissenting opinion purports to adopt the solitary view of the Sixth Circuit as support for its conclusion that the Constitution requires "an appellate attorney . . . to inform his client of the existence of and deadlines for collateral relief, even though counsel had no duty to file the application itself." Diss. Op. 71–72. To do so, it relies on *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), in which the Sixth Circuit found that appellate counsel had a limited duty to advise his client about certain matters related to the filing of his petition for state post-conviction relief. But *Gunner* provides an incomplete picture of the Sixth Circuit's relevant case law, and the dissent acknowledges that "*Gunner* is not controlling Sixth Circuit law," but merely provides "logically persuasive" reasoning for the dissent's own position. Diss. Op. 72 n.8. To be sure, *Gunner* has no bearing on how the Sixth Circuit would resolve whether counsel had a duty to consult with a petitioner like Folkes about an option to pursue additional, discretionary appeals. Thus, not even binding Sixth Circuit case law would agree with the dissent's conclusion that Folkes' counsel had a duty to consult about any subsequent, discretionary appeals. Simply put, *Gunner* lacks the

41

"logical[] persuasive[ness]" the dissenting opinion bestows on it because it addressed appellate counsel's duty with respect to a different type of post-conviction proceeding than is at issue in this case and, consequently, it failed to grapple with relevant Supreme Court case law.

In *Gunner*, an Ohio state prisoner raised claims in his § 2254 petition that would ordinarily have been procedurally defaulted. *Id.* at 515. The prisoner argued that the default should be excused because appellate counsel had been ineffective in failing to notify him of the filing deadlines for state post-conviction relief. *Id.* Ohio's postconviction relief system operates somewhat unusually from other states in that certain types of ineffective assistance of trial counsel claims (including this prisoner's) must be raised in a state petition for post-conviction relief filed *before* the decision in the direct appeal has been issued. Accordingly, the deadline for filing his petition ran from the time the trial transcript is filed in the direct appeal. *See* Ohio Rev. Code Ann. § 2953.21(A)(1)(a)(i), (2)(a). The prisoner did not know the transcript filing date or its implications for a petition alleging ineffective assistance and, as a result, his state petition for post-conviction relief was untimely. *Gunner*, 749 F.3d at 515.

The issue before the Sixth Circuit was whether these circumstances excused the prisoner's procedural default of the affected claim. *Id.* at 515–16. The court held that it did, recognizing that the prisoner's state appellate counsel had a duty to consult with his client about when the trial transcript had been docketed in the direct appeal and the consequences of that filing date on the deadline for filing his petition for post-conviction relief. *Id.* at 517.

In so holding, the Sixth Circuit rejected the state's argument that counsel did not have a duty to inform the prisoner about the state collateral proceedings because the Constitution did not guarantee a right to counsel during those proceedings. *Id.* at 518–19. The court relied on *Martinez v. Ryan*, 566 U.S. 1, 8–9 (2012), in which the Supreme Court recognized, but did not answer, the question of whether the Constitution "require[s] states to provide counsel *in initial-review collateral proceedings* because 'in [these] cases . . . state collateral review is the first place a prisoner can present a challenge to his conviction.'" (alterations in original) (emphasis added) (citation omitted). The *Martinez* Court reiterated that *Douglas*' reasoning for why the right to counsel existed in a direct appeal of right "*may*" also apply when "the initial-review collateral proceeding[]" is "a prisoner's 'one and only appeal' as to an ineffective-assistance claim." *Id.* (emphasis added) (citation omitted); *see Coleman*, 501 U.S. at 755 (declining to resolve whether an exception to the rule "that there is no right to counsel in state collateral proceedings" exists when "state collateral review is the first place a prisoner can present a challenge to his conviction"). *But see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. . . . We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." (internal citation omitted)).

Citing *Martinez,* the Sixth Circuit concluded that the prisoner had a right to counsel during his state post-conviction relief proceeding because, under Ohio law, that proceeding was the first opportunity for him to present his IAC claim. *Gunner*, 749 F.3d. at 518–19. In its view, the Supreme Court's suggestion that the right to counsel may exist when an IAC claim can only be brought in an initial-review collateral proceeding provided a "complete answer to the . . . argument that petitioner cannot complain of [counsel's] failure to advise him of the filing deadline for an initial-review collateral proceeding because that proceeding is one 'for which there is no right to any attorney under the Constitution.'" *Id.* at 519.

*Gunner*'s *Martinez*-based reasoning for why a duty to consult existed plainly does not apply here. Folkes has no *Martinez* claim and has never asserted otherwise. Nor could he: his underlying claim was raised, albeit unsuccessfully, in his initial appeal as of right. Regardless of what aspect of appellate counsel's conduct is considered, it is all in the context of Folkes' desire to pursue a *second* presentation of an issue the state court previously rejected, i.e., filing for a subsequent, discretionary appeal. Thus, to the extent *Gunner*'s holding that a duty to consult existed because a right to counsel existed during the proceeding about which counsel had a constitutional duty to consult, it has no bearing on this case.

That said, *Gunner* did indicate that it would find a constitutional right to counsel existed independently from the "complete answer" *Martinez* provided. *Id.* Specifically, the court indicated it would have rejected the state's argument "even before" *Martinez*. *Id.* Acknowledging the Supreme Court's holding in *Wainwright* that an IAC claim could not

44

be based on counsel's failure to file for discretionary relief, the Sixth Circuit declared that *Wainwright* involved "an altogether different question from whether a defendant can complain about the failure of counsel to advise him of relief that may be available to him or of the necessity to proceed expeditiously if he wishes to obtain such relief." *Id.* Rather than explaining why that was so, the court set aside the constitutional right to counsel and noted that the prisoner "would have very likely have been provided" a right to counsel during the state post-conviction proceeding under "Ohio law and practice." *Id.* This rationale is unpersuasive for two reasons.

First, *Gunner*'s alternative pronouncement lacks a reasoned explanation for why this "different question" than *Wainwright* should be answered differently. *Id.* It does not address any of the relevant Supreme Court precedent or explain how it concluded that an IAC claim could be based on conduct relating to a proceeding during which no constitutional right to counsel exists. The court's only explanation addresses an entirely different issue: whether other sources, such as state law and agency principles, provided a right to counsel. But that is irrelevant to the question of whether a petitioner can assert an IAC claim, which requires a petitioner to show that counsel's conduct fell below the *Constitution*'s requirements. *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020) ("To succeed on an ineffective assistance of counsel claim, the movant must show that counsel performed in a constitutionally deficient manner and that the deficient performance was prejudicial.").

Second, quite apart from *Gunner*'s lack of persuasiveness on this point, an even more forceful barrier prohibits reliance on it: controlling Sixth Circuit precedent. *Gunner*

45

is not the only—or first—Sixth Circuit case to consider whether counsel had a duty to consult with a client about an appellate proceeding other than the initial appeal as of right. In several published opinions decided before *Gunner*, the Sixth Circuit held that appellate counsel does *not* have a duty to "consult" about a proceeding when the Constitution does not guarantee right to counsel during that proceeding. For example, in *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010), the court rejected a § 2254 petitioner's argument that his procedural default of a claim should be excused because appellate counsel was ineffective for "faili[ng] to warn him about the ninety-day deadline" to file for discretionary reopening of his direct appeal "or even to tell him in time about the possibility of filing" such a motion. *Id.* at 929.[13] The court observed that the petitioner had "no constitutional right to counsel," let alone a right to "effective counsel," in pursuing reopening of his direct appeal. *Id.* (emphasis omitted). As such, "any poor advice he received from an attorney [related to his filing a motion to reopen] cannot establish cause for his default." *Id.*; *see Scuba v. Brigano*, 527 F.3d 479, 488–89 (6th Cir. 2007) (holding similarly regarding counsel's failure to timely file motion to reopen); *see also Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (holding the same as *Scuba*, after *Martinez* was decided).

---

[13] *Tolliver* and the other Sixth Circuit cases mentioned in this paragraph specifically considered Ohio's appellate proceedings, in which a motion to reopen the direct appeal is considered a "'separate collateral' proceeding" from the initial appeal of right. *Tolliver*, 594 F.3d at 929 (citation omitted); *see Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) (en banc) (holding that a motion to reopen is "part of the collateral, postconviction process rather than direct review" such that no constitutional right to counsel exists at that stage); *cf. Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 831 (6th Cir. 2019) (holding that no right to counsel exists during the reopened appeal either because that proceeding is also not the initial appeal of right contemplated by *Douglas*).

The Sixth Circuit adheres to the well-recognized principle that a later panel decision of the court cannot conflict with an earlier decision except in limited circumstances that do not apply here. *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case."); *see United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) ("A panel of this court may not overturn binding precedent because a published panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" (citation omitted)). Thus, to the extent the decision in *Gunner* conflicts with these prior, binding precedents, future Sixth Circuit panels are not bound by *Gunner*.

The Sixth Circuit itself recognized this tension between *Gunner* and the court's prior cases (*Tolliver*, *Scuba*, etc.), albeit in an unpublished opinion, and concluded that *Gunner*'s holding was limited to a *Martinez* context. *McClain v. Kelly*, 631 F. App'x 422, 429–38 (6th Cir. 2015) (analyzing Supreme Court and Sixth Circuit precedents predating *Gunner* and holding that "to the extent . . . that *Gunner* announced a rule *independent* of *Martinez*, applying its rule to the [motion to reopen] context would conflict with binding circuit precedent," such as *Scuba* and *Tolliver*, which recognized there is no duty to consult or advise about a proceeding when there is no right to counsel during that proceeding). Contrary to the dissenting opinion's discussion, *Gunner* (and the Sixth Circuit more broadly) provides no persuasive reasoning to support the conclusion that the Constitution

47

required Folkes' appellate counsel to consult with him about how to raise an issue already rejected by a state appellate court in another subsequent, discretionary appeal.

* * * *

What's left of the dissenting opinion is its idiosyncratic application of the Supreme Court's case law. The dissenting opinion erroneously draws on principles articulated in the context of trial counsel's constitutional duties relating to the initial appeal as of right to find novel constitutional duties that appellate counsel has relating to a subsequent, discretionary appeal. But appellate counsel has no duties related to a subsequent, discretionary appeal because a defendant has no constitutional right to counsel related to those proceedings. The Supreme Court has drawn a bright line that places conduct looking forward to a subsequent, discretionary appeal outside the scope of a criminal defendant's constitutional right to counsel. Consequently, even were we to conclude that Folkes' § 2254 petition encompassed the full panoply of claims the district court relied on to grant relief, we would be compelled to reverse. Doing so faithfully applies Supreme Court precedent, which also aligns us with every court of appeals' (including the Sixth Circuit's) understanding of that precedent.[14]

---

[14] The dissent's remaining reasoning to affirm can be distilled to its subjective view that the district court must be permitted to provide relief to a poorly treated defendant. *See* Diss. Op. 50 (referencing the "compellingly troubling story" surrounding Ms. Robinson's departure from the Commission and the follow-up letter to Folkes); *id.* at 65 (opining that federal courts should not "draw . . . harsh lines where we are not truly obligated to do so" or "sit by though clear injustice stares us in the face due to a self-imposed, unnecessarily strict application of procedural rules"). But the principles we apply here respect the district court's proper role in the process as neutral arbiter of the claims presented rather than an advocate in favor of un-raised challenges of one party, no matter how sympathetic. They (Continued)

48

V.

For the reasons stated, we reverse the district court's judgment and remand with instructions to deny Folkes' § 2254 petition.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

also respect *Congress*' rules established in AEDPA, which were intended to respect the function of state courts in vindicating federal rights. *See Burt v. Titlow*, 571 U.S. 12, 19 (2013). No matter how short of best or ethical practices Ms. Robinson's failure to notify Folkes she was withdrawing from representing him or the Commission's letter to Folkes may have fallen, that conduct was not the basis for any constitutional claim Folkes presented in his state PCR application for relief, it was not the claim the state PCR court decided, and—most relevantly—it was not the ground for relief asserted in Folkes' § 2254 petition. That other conduct cannot now form the basis for relief.

WYNN, Circuit Judge, dissenting:

If, as my good colleagues in the majority posit, the only issue properly before us was whether Folkes's appellate counsel was ineffective for failing to file a rehearing petition, I would concur in the judgment, as the state postconviction relief court's finding on that point is not "contrary to" or an "unreasonable application of" federal law. Majority Op. at 31. But instead, the issue that we confront in this appeal is whether Folkes's ineffective-assistance-of-counsel claim, which necessarily incorporated a duty-to-consult[1] argument, was fairly presented to the state court, and properly before the district court. Confronting this issue, the district court recognized that the facts in this matter tell a compellingly troubling story.

It is undisputed that Folkes, an indigent defendant, was abandoned, without notice, by his lawyer before his appeal was resolved. And not only was he left in the dark about the outcome of his direct appeal, but he was also misinformed of the status of his case and his remaining rights. Because the district court correctly addressed the issue, used the proper standard of review, and came to the correct decision as to counsel's constitutional duties, I would affirm.

---

[1] It is important to define what "consult" means in this context. Traditionally, courts have defined "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000). However, for purposes of this dissent, I use the term "consult" in a more pared-down sense—referring only to counsel's duty to inform the client about the court's resolution of his claim and advise him of his next step for appeal.

I.

In 2008, a jury found Folkes guilty of assault and battery with intent to kill. The trial court sentenced him to life in prison without parole pursuant to South Carolina's "three strikes" law. *See Folkes v. Nelsen* (*Folkes II*), No. 2:19-CV-0760-RMG, 2021 WL 62577, at *1 (D.S.C. Jan. 7, 2021); S.C. Code Ann. § 17-25-45 (2015); Response Br. at 3. Folkes challenged his conviction via direct appeal. On September 24, 2010, the South Carolina Court of Appeals affirmed his conviction in a one-paragraph, per curiam opinion. *State v. Folkes*, No. 2010-UP-420, 2010 WL 10080232, at *1 (S.C. Ct. App. Sept. 24, 2010).

Like all South Carolina criminal defendants, Folkes had the option to pursue discretionary review of the Court of Appeals' ruling—first by filing a petition for rehearing in that court, and then by seeking certiorari from the state Supreme Court. S.C. App. Ct. R. 242; *see Douglas v. State*, 631 S.E.2d 542, 543 (S.C. 2006). Under South Carolina procedure, the state Supreme Court will not review a Court of Appeals' decision "until the petition for rehearing or reinstatement has been acted on by the Court of Appeals." S.C. App. Ct. R. 242(c). Though facing a life sentence, Folkes did not pursue further review.

The reason that he did not pursue further review is now apparent. During his state appeal, Folkes was represented by Celia Robinson, an attorney for the South Carolina Commission of Indigent Defense ("the Commission"). Robinson wrote Folkes's appellate brief. However, she left the Commission on September 14, ten days before the Court of Appeals issued its decision. No one ever informed Folkes of Robinson's departure. Robinson never officially withdrew as Folkes's counsel, and no one else from the Commission formally took over his case. Then, on September 28, two weeks after

51

Robinson resigned and four days after the Court of Appeals' decision, Folkes received a letter bearing Robinson's signature and typed on Commission letterhead.[2] The letter explained that the Court of Appeals had denied his petition for writ of certiorari and that Folkes had "exhausted [his] state court remedies." J.A. 777. The letter further explained that the clock was ticking on his time to file a federal habeas petition. This information was patently false, as no petition for rehearing or writ of certiorari had ever been filed on Folkes's behalf, let alone denied. Significantly, the letter was not from Robinson at all, but rather was sent by a paralegal who used the incorrect form letter and forged Robinson's signature.

After the time to continue with his direct appeal had passed, Folkes filed a pro se application in state court for postconviction relief. This application was later amended and expanded by counsel. In his application, Folkes raised over twenty allegations of ineffective assistance of counsel. Ground 3 of his amended application asserted a claim based on the failure to file a petition for rehearing. The state postconviction relief ("PCR") court conducted an evidentiary hearing at which Folkes, Robinson, and the Commission's chief appellate defender, Robert Dudek, testified. At this hearing the facts leading up to, and resulting in, the failure to file a rehearing petition were examined at length. Indeed,

_____

[2] It is not clear from the record whether or when Folkes received the opinion of the South Carolina Court of Appeals. The district court suggested that Folkes was not timely informed of the adverse appellate court decision, at least by any attorney. *Folkes II*, 2021 WL 62577, at \*8 ("[T]here is no record evidence that any licensed attorney assumed the duties of substitute counsel, including the most basic duties of appellate counsel of informing the Petitioner of the adverse decision, of his right to seek further appellate review, and of the consequences of failing to do so."); *see id.* at \*8–10.

much of the testimony at the state evidentiary hearing focused on Robinson's early departure, Folkes's lack of subsequent legal representation, and the erroneous letter.

Dudek confirmed that Robinson left the Commission before the state appellate opinion was issued. He explained that when an attorney leaves, the "cases are [usually] reassigned," J.A. 696, though that did not happen here. He acknowledged that the forged letter "obviously" "contains an error because it refers to denial of the petition for writ of certiorari and, in fact, this is a summary unpublished opinion of the court of appeals." J.A. 696. And Dudek testified that he did not believe he had seen the letter before it went out. He also admitted he had never read the case transcript and stated he had "no independent recollection of reviewing" the South Carolina Court of Appeals' opinion or making any decisions in Folkes's case. J.A. 712–14. When probed by counsel, Dudek readily agreed that there was "nothing in [his] file to indicate that [he] did review this case after the opinion came out." J.A. 714.

Similarly, Folkes's state PCR counsel questioned Robinson about the date of her departure and whether she believed another attorney would take over her active cases. Robinson stated that though she thought someone would review her files after she left, that did not appear to have happened here. Robinson further explained that her paralegal signed and sent the erroneous letter after her departure and without her knowledge. Folkes himself testified that he never knew Robinson had stopped representing him and thought the September 28 letter was signed by Robinson.

The two counsels and Folkes expressed that a rehearing petition should have been filed. Robinson testified that, had she remained with the Commission, she "certainly"

53

would have filed a petition for rehearing on Folkes's behalf, as she thought his issue "was a winner." J.A. 723–24. And Dudek stated that, while he "wish[ed]" rehearing had been pursued, he had no specific recollection of reviewing Folkes's case at the time or making any decision regarding the merits of further review. J.A. 699–701, 713, 717. Lastly, Folkes explained that, had he known of the option, he would have wanted to press his appeal before the state Supreme Court.

On January 14, 2014, the state PCR court dismissed all of Folkes's claims. In its factual summary, the state court described these events at length. However, in dismissing Folkes's failure-to-file claim, the state court dealt with none of the facts described above nor the intertwined lack-of-consultation issue. Instead, the state PCR court only addressed the failure-to-file component. In dismissing this claim, it relied on two U.S. Supreme Court cases, *Wainwright v. Torna*, 455 U.S. 586 (1982), and *Ross v. Moffitt*, 417 U.S. 600 (1974), for the proposition that "[a]n individual has no constitutional right to the effective assistance of counsel when seeking discretionary appellate review." J.A. 800–03. The state PCR court also cited *Douglas v. State*, 631 S.E.2d 542, noting that in South Carolina, appellate counsel has no duty "to pursue rehearing and/or certiorari following the decision of the [South Carolina] Court of Appeals in a criminal direct appeal." J.A. 802–03 (quoting *Douglas*, 631 S.E.2d at 543–44). The state court concluded that, because Folkes's counsel had no state-law duty to pursue rehearing or certiorari and he had no constitutional right to effective assistance of counsel during discretionary appellate review anyway, his failure-to-file claim lacked merit.

54

Folkes then filed a petition for certiorari to the Supreme Court of South Carolina. This petition outlined all the conduct leading up to the failure to file a rehearing petition, including Robinson's departure, Folkes's subsequent lack of representation, and the existence of the erroneous, forged letter. The Supreme Court of South Carolina transferred the appeal to the South Carolina Court of Appeals, which denied the petition on October 16, 2018.

Thereafter, Folkes filed a pro se federal habeas petition, raising the same claims previously rejected by the state PCR court. Recognizing the severe injustice reflected in the facts and the intertwined nature of the duty to consult and the duty to file, Judge Gergel posed a series of factual and legal questions to the parties and ordered further briefing as to Ground 3. *Folkes v. Nelsen* (*Folkes I*), No. 2:19-CV-0760-RMG, 2020 WL 728698, at *4 (D.S.C. Feb. 12, 2020); *see Folkes II*, 2021 WL 62577, at *5–7. The parties provided answers and additional briefs.

Judge Gergel understood Ground 3 to "assert[] a claim for ineffective assistance of appellate counsel from the time of the adverse decision of the South Carolina Court of Appeals on September 24, 2010[,] until the issuance of remittitur on October 18, 2010." Majority Op. at 8 (quoting *Folkes II*, 2021 WL 62577, at *4). Finding this issue to have been raised but not adjudicated in the state PCR court, Judge Gergel undertook de novo review. *See id.* at 9; *Folkes II*, 2021 WL 62577, at *9–10. Ultimately, Judge Gergel concluded that Folkes had been deprived of effective assistance of counsel at a critical stage of his direct appeal and was prejudiced by that failure. *Folkes II*, 2021 WL 62577, at *8–10.

The majority disagrees, arguing that this expanded interpretation of Ground 3 was neither properly raised in Folkes's § 2254 petition nor fairly presented to the state court. Majority Op. at 17–21. Consequently, the majority asserts that the district court reversibly erred by considering the claim and impermissibly "circumvent[ing] [the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')] framework." *Id.* at 21. The majority further asserts that even if this issue was properly before us, these events do not amount to a deprivation of Folkes's right to effective assistance of counsel, since he had no right to counsel at the time any error occurred. *See id.* at 32–34.

The majority errs by considering Folkes's pro se petition in a vacuum and by disregarding the extensive and egregious facts clearly implicating a limited duty to consult. This failure was properly before the state PCR court and the district court. Because the state PCR court declined to adjudicate the failure-to-consult issue on the merits, the district court was correct to review the issue de novo. Moreover, because the failures of counsel occurred during the tail end of Folkes's first appeal as of right, at which time there is a constitutional right to counsel, I agree with the district court's conclusion that Folkes demonstrated ineffective assistance of counsel.

## II.

I turn first to the issue of whether the failure-to-consult argument was properly before the state PCR Court. The duty to file an appeal, in this instance, includes filing a petition for rehearing at the appellate court because that is a required step under South Carolina law before certiorari may be sought. *See* S.C. App. Ct. R. 242(c)–(d). Because

56

this Court has stated that counsel's duty to file an appeal and the duty to consult are intertwined, *see Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015), the failure-to-consult argument was fairly before the state court.

A "§ 2254 petitioner is required to 'exhaust' all state court remedies before a federal district court can entertain his claims." *Matthews v. Evatt*, 105 F.3d 907, 910 (4th Cir. 1997) (quoting 28 U.S.C. § 2254(b)–(c)), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *Picard v. Connor*, 404 U.S. 270, 275 (1971) (collecting cases). Thus, before we may hear a claim, the petitioner must show that the relevant issues were "fairly presented" to the state courts. *Matthews*, 105 F.3d at 911; *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994) (explaining that petitioner has the burden to make this showing).

"A claim is fairly presented when the petitioner presented to the state courts the '"substance" of his federal habeas corpus claim.'" *Matthews*, 105 F.3d at 911 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted)). To meet this requirement, a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *Mallory*, 27 F.3d at 995 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "To satisfy his burden, the petitioner must show that 'both the operative facts and the controlling legal principles [were] presented to the state court.'" *Gordon*, 780 F.3d at 201 (quoting *Jones v. Sussex I State Prison*, 591 F.3d 707, 713 (4th Cir. 2010)); *Mallory*, 27 F.3d at 994–95 (stating that a claim "must be presented face-up and squarely" and that a "habeas petitioner cannot simply apprise the state court of the facts underlying a claimed constitutional violation," but "must also explain how those

alleged events establish a violation of his constitutional rights" (first quoting *Martens*, 836 F.2d at 717, then citing *Anderson*, 459 U.S. at 6)).

Our decision in *Gordon v. Braxton* is illustrative here. In *Gordon*, after failing to timely file a direct appeal, Gordon filed a pro se habeas petition in Virginia state court for ineffective assistance of counsel arising from his sentencing hearing. 780 F.3d at 199. Gordon later amended the petition to add a sixth claim alleging his trial counsel was ineffective since he "failed to file an appeal when asked to do so." *Id.* On this claim, the state PCR court found that Gordon failed to show ineffective assistance since he had merely inquired about an appeal, instead of directly requesting one. *Id.* at 200. The state court's decision thus focused on the failure to file an appeal, "but said nothing about counsel's duty to consult." *Id.* His petition for appeal to the Supreme Court of Virginia was denied. *Id.*

Thereafter, Gordon filed a pro se habeas petition in federal district court. *Id.* The district court dismissed his petition. *Id.* On appeal, this Court reversed. We noted that "Gordon's claim implicate[d] two related duties entrusted to criminal defense attorneys": the duty to file an appeal when so instructed and the duty to consult with a client, even if no appeal is expressly requested, "when a rational defendant would want to appeal or [the] client expresses an interest in appealing." *Id.* "Dereliction in either duty," we advised, "constitutes deficient performance." *Id.*

The State claimed that Gordon failed to exhaust his consultation claim because his state court petition only mentioned a failure-to-file claim. *Id.* We disagreed and held that the failure-to-consult issue had been fairly presented to the state court. *Id.* at 200–02. We

found the failure-to-consult issue implicit in the failure-to-file claim, noting that the two duties fell along a "spectrum" and were often addressed together. *Id.* at 201 (citations omitted). We further explained that facts alleged in the parties' filings, such as Gordon's inquiry "about what could be done after" sentencing, were sufficient to trigger counsel's duty to consult. *Id.* Moreover, we noted that the "parties' filings before the state court referred to *Strickland*, *Flores-Ortega*," and a state Supreme Court decision all of which discussed the duty to file and the duty to consult. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984) and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). Thus, because of the related nature of these duties and the presence of illustrative facts and legal authority in the record, we found the failure-to-consult theory to have been properly presented. *See id.* at 201–02.

The facts here are similar. In his state habeas petition, Folkes asserted an ineffective-assistance-of-counsel claim for appellate counsel's failure to file a petition for rehearing, his next step for appeal. As in *Gordon*, while the exact language of Folkes's petition did not separately assert the failure-to-consult issue, a review of the surrounding facts clearly implicated questions regarding the duty to file *and* the duty to consult. In *Gordon*, the petitioner indicated an interest in an appeal. *Id.* In this case, before he could even express such an interest, Folkes received a forged letter suggesting that an appeal had *already* been filed on his behalf and been denied. In other words, the failure to consult here interfered with Folkes's basic understanding of where his case stood and any attempt to request a rehearing he could or would have made.

Tellingly, Dudek and Robinson admitted that they believed a rehearing petition would have been appropriate and, as Folkes was facing life in prison, it is certainly reasonable to believe that Folkes would have wished to pursue any appeals available to him. In fact, Folkes confirmed that he would have wanted to pursue such an appeal. In short, the facts before the state court implicated a duty to consult since "there [was] reason to think . . . that a rational defendant would want to appeal" the decision. *Flores-Ortega*, 528 U.S. at 471.

Both the facts and the failure-to-consult argument were thus squarely presented to the state court within Ground 3 of Folkes's petition. Like the petitioner in *Gordon*, Folkes cited to *Strickland* and described the egregious facts indicating a failure-to-consult issue throughout his state-court filings. *See* Attach. #2 to Return and Mem. to Pet. for Writ of Habeas Corpus at 281–89, *Folkes II*, 2021 WL 62577 (No. 2:19-CV-0760-RMG). The facts implicating the duty to consult were hardly "scatter[ed] . . . makeshift needles in the haystack of the state court record." *Mallory*, 27 F.3d at 995 (quoting *Martens*, 836 F.2d at 717). Facts demonstrating counsel's early departure, Folkes's lack of subsequent representation, and the forged letter were front and center at the state PCR court evidentiary hearing. Thus, the state court was in no way left to divine the failure-to-consult issue from "[o]blique references . . . lurking in the woodwork," or "vague whispers . . . [of] a federal constitutional violation." *Id.* at 995–96. The failure-to-consult aspect of Ground 3 stared the state PCR court directly in the eyes.

Because the failure-to-consult argument was properly before the state PCR court as part of Ground 3, Folkes exhausted his state remedies.

60

### III.

For similar reasons, the failure-to-consult argument was also properly before the district court. As noted above, the duty to file and the duty to consult are closely intertwined, such that arguments raising either one of these duties may exist under one ineffective-assistance-of-counsel claim through implication, even if one is not specifically invoked. *See Gordon*, 780 F.3d at 200–202, 202 n.2. For this very reason, we rejected the State's argument in *Gordon* that the petitioner should have identified counsel's failure to consult as a separate claim. *Id.* For the following reasons, we should not depart from that logic now.

### A.

To begin, the situation here is akin to that in *Gordon*. Although, like in *Gordon*, the language of Ground 3 only specifically mentioned a failure to file, extensive facts developed in the record and noted in the state PCR court's decision clearly implicated counsel's duty to consult. So, also like in *Gordon*, Folkes's claim here effectively incorporates a failure-to-consult argument for relief. This notion is further supported by the fact that, in this case, the duty-to-consult and the duty-to-file theories arise from the same series of facts, all of which were before the state court when it made its decision. *See* Attach. #2 to Return and Mem. to Pet. for Writ of Habeas Corpus at 281–89, *Folkes II*, 2021 WL 62577 (No. 2:19-CV-0760-RMG). Moreover, both parties have acknowledged the close relationship between these two duties, as even the State's counsel at oral argument initially described these issues as "intertwined" and "part and parcel" of the same claim.

61

Oral Arg. at 3:20–3:32, 4:57–5:20, https://www.ca4.uscourts.gov/OAarchive/mp3/21-6217-20210917.mp3.[3]

Additionally, even if raising a failure-to-file claim would not be enough, on its own, for a counseled individual to show that he preserved his failure-to-consult argument, Folkes, like the petitioner in *Gordon*, filed his § 2254 petition pro se. And "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (unpublished but orally argued) (noting that courts "are obliged to liberally construe filings by pro se litigants"); *Fitz v. Terry*, 877 F.2d 59, No. 88-7328, 1989 WL 64157, at *1 (4th Cir. 1989) (per curiam) ("Initially, *pro se* petitions are to be given a liberal construction."). Certainly, this generosity is not without limits. Courts need not anticipate arguments from fleeting or obscure references and should not "seek[] out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). However, we have previously noted that "liberal construction requires active interpretation in some cases," *Fitz*, 877 F.2d 59, 1989 WL 64157, at *2 (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (per curiam)), and that "litigants with meritorious claims should not be tripped up in court on technical niceties," *Beaudett*, 775 F.2d at 1278.

---

[3] He later backtracked and stated that they were different issues. Oral Arg. at 6:45–7:35.

Liberally construing Folkes's pro se petition, as we must, we should find that he sufficiently raised the failure-to-consult theory.

B.

The first section of the majority opinion focuses on strict adherence to procedural rules. Relying primarily on *Samples v. Ballard*, 860 F.3d 266 (4th Cir. 2017), the majority holds that Folkes never properly raised the failure-to-consult argument as a separate claim in his § 2254 petition. Majority Op. at 11–21. According to the majority, we should strictly construe the language of Folkes's pro se petition and only consider the exact wording— "fail[ure] to file a Petition for Rehearing"—when determining the scope of his claim. *Id.* at 4 (quoting J.A. 679); *see id.* at 19. However, this interpretation stretches *Samples* too far and undercuts the reasoning of our earlier decision in *Gordon*.[4]

First, the facts giving rise to our decision in *Samples* are not similar to those before us now. In *Samples*, this Court considered whether a magistrate judge abused their discretion in refusing to hear new ineffective-assistance-of-counsel claims admittedly raised for the first time in objections to the magistrate's proposed findings and recommendations. *Samples*, 860 F.3d at 268–270, 274–76. That is simply not the context we have here.

---

[4] These opinions need not conflict, but to the extent the majority believes they do, when there are "conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004).

Second, to the extent *Samples* stands for the proposition that petitioners, even pro se petitioners, should state the claimed grounds of relief discretely, *see id.* at 274–75, this general principle cannot override *Gordon*'s holding that these duties are so intertwined that raising one necessarily implicates the other. The majority stresses that in *Samples*, we explained that the petitioner's "express reliance on [his initial] four claims of ineffective assistance of counsel" were "to the exclusion of other claims of ineffective assistance of counsel." *Id.* at 275 (citing *Mayle v. Felix*, 545 U.S. 644, 661 (2005), for the proposition that different habeas claims "must be pleaded discretely"); *see* Majority Op. at 13–14, 17–19. Thus, the majority concludes that Folkes defaulted on the failure-to-consult theory by not raising it as a separate claim. Majority Op. at 17–21. But this conclusion stretches *Samples* beyond its context and, in doing so, runs counter to *Gordon*. *Gordon*, 780 F.3d at 200–02. Consequently, *Samples* does not control in this case.

Lastly, the majority contends that the Supreme Court decision in *Wainwright* involved "a claim identical" to that at issue here, thus prohibiting the application of *Gordon*'s reasoning to the duties of appellate counsel in wrapping up a direct appeal. Majority Op. at 27. I disagree. *Wainwright* held that a defendant could not be "deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely" because he had "no constitutional right to counsel" for a discretionary appeal. 455 U.S. at 587–88. But the Court in *Wainwright* had no reason to discuss any limited duty of consultation because the defendant's counsel "promised him that he would seek review in the Florida Supreme Court." *Id.* at 589 (Marshall, J., dissenting). Thus, in *Wainwright*, it appears that counsel spoke with his client about the opportunity and need to appeal. *See id.*

By contrast, here, neither Robinson nor any other attorney ever spoke with Folkes about the outcome of his direct appeal or the chance to file a petition for rehearing. *Folkes II*, 2021 WL 62577, at *4 ("What is undisputed is that . . . no attorney advised [Folkes] of the adverse decision of the Court of Appeals or of his right to seek further appellate review."). Indeed, no lawyer was officially representing Folkes at all during this time. Therefore, I disagree that *Wainwright* forecloses a limited duty to consult or severs all ties between the duty to consult and the duty to file at the appellate stage.

## C.

The majority also faults Folkes for not using precise language or adhering strictly to all § 2254 filing requirements. Majority Op. at 17–21. And the majority's belief that it is tightly bound by these procedural rules is understandable. There are certainly reasons to require petitions, even pro se petitions, to adhere to these standards. But we should hesitate to draw such harsh lines where we are not truly obligated to do so. Courts should not be forced to sit by though clear injustice stares us in the face due to a self-imposed, unnecessarily strict application of procedural rules. The district court exercised discretion and common sense to address the injustice clearly present in the facts before it. Because Folkes's claim included the failure-to-consult theory, we should too.

## IV.

Having found that the claim was properly presented under these extraordinary facts, the next step is to determine whether the state court adjudicated the failure-to-consult issue on the merits. It did not.

Under AEDPA, a federal court may only grant a state prisoner habeas relief "with respect to any claim that was adjudicated on the merits" if the state court's decision "was contrary to . . . clearly established [f]ederal law"; "involved an unreasonable application" of such law; or "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d); *see, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 100 (2011). However, if a state court fails to adjudicate the merits of a claim, then the "gloves come off" and federal courts may review the claim de novo. *Valentino v. Clarke*, 972 F.3d 560, 576 (4th Cir. 2020) ("[I]f a state court shuns its primary responsibility for righting wrongful convictions and refuses to consider claims of error, the weighty concerns of federalism and comity are diminished."); *see Gordon*, 780 F.3d at 202.

Whether the state court adjudicated the failure-to-consult issue on the merits "is a case-specific inquiry," *Winston v. Pearson*, 683 F.3d 489, 496 (4th Cir. 2012), and "a legal question that we review *de novo*," *Valentino*, 972 F.3d at 576. If a claim has been presented and denied by a state court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication . . . to the contrary," even if it did not give reasons for its opinion. *Harrington*, 562 U.S. at 99. The petitioner bears the burden of "overcoming this 'strong but rebuttable' presumption." *Valentino*, 972 F.3d at 576 (quoting *Johnson v. Williams*, 568 U.S. 289, 301 (2013)). However, this presumption is not insurmountable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Harrington*, 562 U.S. at 99–100.

Here, Folkes met this burden. The facts before the state PCR court "clearly implicated [counsel's] duty to consult, which the state court did not address at all." *Gordon*,

780 F.3d at 203–04. While the state court acknowledged the facts implicating a duty to consult and discussed appellate counsel's duty when seeking discretionary review, it said "nothing at all" in its analysis about Robinson's departure prior to the issuance of the Court of Appeals' opinion, the fact that no lawyer informed Folkes of the outcome of his appeal, or the misinformation provided by the forged form letter. *Id.* at 202 (finding that the state court failed to adjudicate the failure-to-consult issue on the merits since it (1) "unreasonably truncated further factual development" on that issue and (2) "said nothing at all about [petitioner's] assertion that [counsel] failed to consult with him"). And the cases upon which the state court relied do not clearly define what duties appellate counsel owes to an indigent defendant before the ink dries on their direct appeal opinion, let alone in the weeks before any opinion is issued. *See Porter v. Zook*, 898 F.3d 408, 425 (4th Cir. 2018) (finding the state habeas court failed to address a claim on the merits where it "*did not recognize the governing legal principle[s]*" and failed to recognize the distinction between two separate claims).

The notable lack of analysis on this issue gives "reason to think some other explanation for the state court's decision is more likely" than an assumption that it adjudicated it on the merits. *Harrington*, 562 U.S. at 99–100. This is particularly true when one considers the state court's repeated reference only to the failure to file the petition itself, excluding all conduct leading up to and effectuating that failure. The combination of

67

these considerations indicates that, contrary to implicitly adjudicating the issue, the state PCR court never decided the failure-to-consult issue at all.[5]

Consequently, the state PCR court failed to adjudicate the claim on the merits.

V.

Because the state PCR court did not adjudicate the failure-to-consult issue on the merits, the district court, and this Court, owe "no deference to the state court's ruling." *Gordon*, 780 F.3d at 204. Instead, we must review de novo the question of whether counsel's failure to consult constituted ineffective assistance. *Id.* at 202.

However, before reaching the merits of this argument, this Court must first determine, as the district court did, whether any right to counsel exists at the time the alleged failure occurred. If such a right does exist, then Folkes must demonstrate that counsel's failure was objectively unreasonable and resulted in prejudice. *Bostick v. Stevenson*, 589 F.3d 160, 166 (4th Cir. 2009) (citing *Strickland*, 466 U.S. at 688–90). I turn first to the foundational issue of whether Folkes had any constitutional right to representation at the time of appellate counsel's failure to consult with him.

A.

To have a Sixth Amendment claim for ineffective assistance of counsel, a defendant must first have the right to counsel. *Wainwright*, 455 U.S. at 587–88 (explaining that a

---

[5] The State argues otherwise. But notably, most of the cases cited by the State to give support for the notion that the state PCR court considered the failure-to-consult issue and adjudicated it reasonably, appear nowhere in the state PCR court's analysis of the issue.

68

defendant who has "no constitutional right to counsel . . . [cannot] be deprived of the effective assistance of counsel"). A defendant is entitled to effective assistance of counsel during a direct appeal as of right, just as he is so entitled at trial.[6] *E.g.*, *Smith v. Robbins*, 528 U.S. 259, 275–76 (2000); *Douglas v. California*, 372 U.S. 353, 357–58 (1963); *Tisdale v. State*, 594 S.E.2d 166, 167 (S.C. 2004). But a criminal defendant has no constitutional right to counsel in the pursuit of "discretionary appeals" beyond a "first appeal as of right." *Moffitt*, 417 U.S. at 607, 612, 619; *see Wainwright*, 455 U.S. at 587.

The majority posits that Supreme Court precedent establishes that the right to counsel on appeal truly pertains only to counsel's duty to *present* the client's case on appeal and mandates that said duty terminates before a defendant even knows the outcome of his first appeal. Majority Op. at 24–30, 32–38. I disagree.

Supreme Court precedent certainly establishes that a criminal defendant (1) has a constitutional right to have an appellate lawyer file a brief and support him in presenting his case during his direct appeal, *see, e.g.*, *Evitts v. Lucey*, 469 U.S. 387, 394, 396 (1985), and (2) has no right to have counsel file for a discretionary appeal, *Wainwright*, 455 U.S.

---

[6] The Sixth Amendment, made applicable to the States via the Fourteenth Amendment, establishes a defendant's right to counsel at the trial level and guarantees the right to effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 392 (1985). The right of an indigent criminal defendant to counsel at the appellate level, by contrast, is grounded in the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *United States v. Marshall*, 872 F.3d 213, 217 (4th Cir. 2017). Despite this difference, where "a convicted defendant elects to appeal, he retains the Sixth Amendment right to representation by competent counsel." *McCoy v. Ct. of Appeals of Wis.*, 486 U.S. 429, 436 (1988); *accord Evitts*, 469 U.S. at 396 ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney.").

at 587–88. But this sets out only a floor and a ceiling—and what duties may exist in the space between these two parameters is not as settled as the majority suggests.[7]

As the district court acknowledged, whether the duty to consult—in this case to notify and advise a defendant of an adverse appellate decision and his remaining recourses—constitutes part of a direct appeal or the first step of a discretionary appeal, remains an open and debated question. *Folkes II*, 2021 WL 62577, at \*9. Indeed, our sister circuits have taken conflicting positions on this issue.

Several circuits have adopted an approach in line with that espoused by the majority and found that counsel is not required either to notify their client of an adverse appellate decision or to advise them of the existence of remaining appeals or other avenues of relief. *See, e.g.*, *Miller v. Keeney*, 882 F.2d 1428, 1430–33 (9th Cir. 1989) (rejecting an ineffective-assistance claim based on appellate counsel's incorrect advice on subsequent appeals resulting in defendant's forfeiture thereof, explaining that when counsel gave defendant faulty advice, "she was no longer acting as counsel for his first appeal as of right; that appeal was long since gone, and with it went [defendant]'s constitutional right to the

---

[7] It is true that many of the Supreme Court's cases "dealing with the right to counsel—whether at trial or on appeal—have often focused on the defendant's need for an attorney to meet the adversary presentation of the prosecutor." *Evitts*, 469 U.S. at 394–95 n.6. But appellate representation requires more than simply filing a brief and then running for the hills. After all, another "aspect of counsel's role" is "that of [an] expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision[.]" *Id.* The question at issue here is simply where to draw the line. The majority would end appellate counsel's duties the second the court enters its decision, even though a defendant has not yet obtained the results. As explained below, I do not believe this line must be drawn with same the brushstroke as the docket entry.

70

effective assistance of counsel"); *Pena v. United States*, 534 F.3d 92, 94–96 (2d Cir. 2008) (rejecting the argument that a first-tier appeal "encompasses a requirement that his attorney inform him of the possibility of certiorari review and assist him with filing a petition" as "ingenious, but *wrong*" (quoting *Chalk v. Kuhlmann*, 311 F.3d 525, 529 (2d Cir. 2002))); *Moore v. Cockrell*, 313 F.3d 880, 881–82 (5th Cir. 2002) (rejecting a defendant's claim that his appellate counsel was ineffective for "failing to notify him timely of the outcome of his direct appeal," thereby preventing him from filing a timely discretionary appeal, because the "constitutionally secured right to counsel ends when the decision by the appellate court is entered"); *cf. Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008) (finding no constitutional ineffective-assistance-of-counsel claim where the appellate attorney sent a letter to the defendant informing her of his decision not to file a petition for writ of certiorari, but not informing her of the procedure and time limits for filing a certiorari petition pro se).

The Sixth Circuit, however, has leaned away from such a harsh rule, finding that the Constitution requires counsel to notify a defendant of the outcome of his direct appeal and that a failure to do so "constitutes constitutionally deficient performance." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006); *see id.* at 433. In *Gunner v. Welch*, a Sixth Circuit panel extended this right to hold that an appellate attorney had a constitutional duty to inform his client of the existence of and deadlines for collateral relief,

71

even though counsel had no duty to file the application itself.[8] 749 F.3d 511, 517–19 (6th Cir. 2014). The Fourth Circuit has yet to decide this issue, but the district court found the Sixth Circuit's reasoning in *Smith* persuasive. Because a defendant is entitled to effective assistance throughout his *entire* first appeal as of right, I agree.

The Supreme Court has recognized that the right to representation is a "fundamental component of our criminal justice system" and that "[l]awyers in criminal cases 'are necessities, not luxuries.'" *United States v. Cronic*, 466 U.S. 648, 653 (1984). In fact, "[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *Id.* at 654 (quoting Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 8 (1956)). The appointment of counsel is not intended to be a "sham" or token tip of the hat to the constitutional requirement. *Id.* at 654. Thus, the right to counsel necessarily ensures the right to *effective assistance* of counsel at all critical stages. *Id.* at 654, 659; *see Penson v. Ohio*, 488 U.S. 75, 88 (1988).

---

[8] The majority distinguishes *Gunner* by noting that it (1) discussed a right to initial review on collateral proceedings for which the Supreme Court in *Martinez v. Ryan* recognized that there "may" be a constitutional right to counsel, and (2) is not controlling Sixth Circuit precedent. Majority Op. at 43 (emphasis omitted) (quoting *Martinez v. Ryan*, 566 U.S. 1, 8–9 (2012)); *see id.* at 43–48. But, as the majority admits, the *Gunner* panel stated that it would find the same duty "even before the holding in *Martinez*." 749 F.3d at 519; *see* Majority Op. at 44–45. Moreover, while the majority is correct that *Gunner* is not controlling Sixth Circuit law, Majority Op. at 45–48, it need not be for the reasoning employed by the *Gunner* panel to be logically persuasive—which is the sole question we must consider in looking to out-of-circuit precedent anyway.

It does not automatically follow that because a defendant has no right to counsel in pursuing a discretionary appeal, he has no right to counsel in the conclusion of his direct appeal. Because a combination of the Sixth Circuit's approach in *Smith* and the panel's reasoning in *Gunner* accounts for this narrow distinction, those views are the most persuasive among those expressed by our sister circuits. As the Sixth Circuit has repeatedly recognized, appellate counsel's duties do not end after filing briefs or even after the opinion is issued. Instead, the Sixth Circuit has explained that "[b]ecause a defendant is entitled to effective assistance of counsel on direct appeal, such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings." *Smith*, 463 F.3d at 433 (quoting *White v. Schotten*, 201 F.3d 743, 752–53 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (en banc)).

Consequently, I believe this duty encompasses notifying a defendant of the outcome of a proceeding and advising the client about the existence of further appeals. *See Gunner*, 749 F.3d at 517. The "Constitution requires 'that counsel make objectively reasonable choices,' . . . not only *during* the legal proceeding for which the counsel represents the client, but also *after* the judicial proceeding has concluded in determining whether an appeal should be filed." *Smith*, 463 F.3d at 433–34 (quoting *Flores-Ortega*, 528 U.S. at 479). So, where counsel "delay[s] in informing [a] defendant of the decision on his first appeal of right" and "fail[s] to communicate to his client how to proceed with further appeals, it cannot fairly be said that [the defendant] truly had his first appeal of right." *Gunner*, 749 F.3d at 517 (internal quotations omitted). Though the duty to consult and the

73

duty to file are closely intertwined and often considered in tandem, they are distinct legal obligations—counsel may violate one without running afoul of the other. *See id.* at 519. Thus, while a defendant cannot "complain of the failure of counsel to file an application for relief to which the Constitution did not entitle him, . . . that is an altogether different question from whether a defendant can complain about the failure of counsel to advise him of relief that may be available to him or of the necessity to proceed expeditiously if he wishes to obtain such relief." *Id.* This is precisely the situation we have before us now.

At a minimum, the scope of a direct appeal includes a constitutional duty of defense counsel to notify a defendant of the ultimate resolution of that direct appeal. *See Smith*, 463 F.3d at 433.[9] "The court's ultimate decision regarding a particular legal proceeding is *part of that legal proceeding*, and [defense] counsel's duties in representing a client during that legal proceeding include the duty of informing her client of the outcome of the proceeding." *Id.*; *cf. Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997) (discussing state code, state case precedent, and U.S. Supreme Court precedent and finding that since "the scope of the right to counsel is governed by the right to which it attaches[, i]t makes sense that counsel on direct appeal must inform a defendant of the result of the appeal"). Accordingly,

---

[9] In finding that a defendant did not require an attorney to pursue discretionary appeals, the Supreme Court noted that a defendant at such a stage will have access to the relevant materials—including the disposition of the Court of Appeals—required to file a petition. *See Ross*, 417 U.S. at 615 ("At that stage he will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case."). While a defendant may benefit from counsel at any stage, he is sufficiently equipped with these materials to file a petition on his own. But the issue still remains: without notice of an adverse decision, there is nothing for a pro se defendant to appeal.

"a decision cannot be logically separated from the proceeding itself; it is the necessary end point of a single process." *Gunner v. Welch*, No. 3:09 CV 3009, 2011 WL 10467929, at *8 (N.D. Ohio Mar. 29, 2011), *report and recommendation adopted*, No. 3:09 CV 03009, 2013 WL 774154 (N.D. Ohio Feb. 28, 2013), *rev'd and remanded on other grounds*, 749 F.3d 511 (6th Cir. 2014). "The mouth and the source are different points, but manifestly a single river. As such, if the [C]onstitution requires counsel when a defendant journeys on the river, counsel's responsibilities include, in essence, making the full trip." *Id.* Failing to acknowledge counsel's duty to inform a defendant of an appellate court's ultimate resolution of his case essentially allows counsel to hurl his client overboard before reaching the safety of the docks.[10] This cannot be consistent with what our Constitution requires.

Similarly, the right to counsel on direct appeal includes some duty to consult, even if in a more limited fashion than what is required at the trial stage. As such, counsel must inform a defendant of the next stage of appeals and any corresponding procedural requirements, even if we do not require them to offer any advice on the merits of pursuing

---

[10] A defendant who is uninformed of the appellate court's decision, through no fault of his own, cannot reasonably be expected to timely pursue an appeal of his own accord. After all, if a defendant is not notified by anyone of the outcome of his case, he does not even know that there is anything to appeal—let alone the date on which his time to appeal began to run. *See Smith*, 463 F.3d at 434 ("The only way that [the defendant] could have learned of the unpublished decision of the Ohio Court of Appeals affirming his conviction was if his counsel notified him. When she failed to do so, [the defendant] was without any means of notice of the decision and thus did not and could not know that the . . . deadline for filing a notice of appeal . . . had started to run.").

75

further relief.[11] *See Gunner*, 749 F.3d at 517 ("[J]ust as the debt collector was obligated to inform his principal of the necessity to take immediate legal steps to collect the debt, even though he was not obligated to take those legal steps, [counsel] was obligated to communicate comparable information to petitioner."). Criminal law is complex. The majority sets the bar too high by requiring a pro se, indigent, and imprisoned defendant, who is without knowledge that the direct appeal has ended and under the reasonable belief that he is represented by counsel, to retain alternative counsel[12] and file a timely appeal.

Requiring counsel to merely inform a defendant of when their next ship will depart is a far cry from requiring counsel to serve as the captain of that ship. *See id.* (explaining that where appellate counsel "knew or should have known that this proceeding had to be brought within 180 days of the date on which the trial transcript was filed with the Ohio

---

[11] *Compare Paris v. Turner*, No. 97–4129, 1999 WL 357815, at *3 (6th Cir. May 26, 1999) (unsigned order) (finding ineffective assistance of counsel sufficient to excuse procedural default where petitioner's counsel "on his appeal of right gave him no guidance on how to further appeal and failed to develop the legal issues that would most likely allow [him] to succeed" and noting that "it would be unjust to blame a layman" for appellate counsel's failure since "[t]hey did not inform him that he was in danger of procedural default and as a layman it would not be evident to him that his claim might procedurally expire while in the hands of the Public Defender"), *with Hale v. Burt*, 645 F. App'x 409, 417 (6th Cir. 2016) ("There is no principled difference between having counsel *represent* a defendant during a second, discretionary appeal and having counsel *advise* a defendant on *whether or not to seek* a second, discretionary appeal, and a criminal defendant does not have a constitutional right to counsel to pursue second, discretionary state appeals.").

[12] At the PCR hearing, Dudek testified that the South Carolina Court of Appeals "no longer accept[s] pro se petitions for rehearing." J.A. 698–99. Robinson concurred, stating that the appeals court "at some point . . . stopped accepting" pro se rehearing petitions. J.A. 717–18. Neither party challenged this interpretation of state procedural rules in briefing. Assuming this is true, Folkes needed to retain alternative counsel to file a brief on his behalf—something he could only do if he knew it was necessary.

Court of Appeals, and he also knew that his client would surely have not known when the trial transcript was filed or of the necessity to take immediate legal steps," he was "obligated to communicate" that information to the petitioner, even though he had no obligation to pursue the next steps himself); *see also id.* at 519. In short, counsel should be required, as part of a defendant's direct appeal, to at least inform his client of what the immediate next step may be, as well as any applicable time limits or procedural requirements. *See id.* at 517–19.

Adopting a contrary approach leads to unsettling results. A rule that releases appellate counsel from all constitutional obligations the moment an opinion is issued, or in this case ten days *before* that point, seems unduly harsh and out of step with the duties required of counsel in parallel circumstances. What sense does it make to equip an indigent defendant with counsel, who zealously pursues an appeal, only to leave him in the dark about the outcome? Or to only inform a defendant sitting in prison, facing a lifetime behind bars, of the outcome of his direct appeal so late that any further review is foreclosed? The constitutional right to appellate counsel must cover more than merely filing the briefs and allowing counsel to depart without a word. Otherwise, an indigent defendant has no meaningful recourse as we would effectively put the onus on criminal defendants to be ready to fend for themselves at all times, since if counsel withdraws without notice, it is the defendant whose rights are sacrificed. That is precisely what happened here.

B.

The foregoing discussion shows why the Sixth Amendment requires counsel to notify an indigent defendant of the outcome of his direct appeal and advise the defendant

77

of the next potential avenue for appeal. Thus, because there is a right to counsel during all stages of the direct appeal, the next question is whether Folkes has successfully showed he was deprived of effective assistance of counsel. He has.

To prove ineffective assistance of counsel, a petitioner "must show [(1)] that counsel's performance was . . . objectively unreasonable under prevailing professional norms and (2) that petitioner was prejudiced by that deficient performance." *Bostick*, 589 F.3d at 166 (citing *Strickland*, 466 U.S. at 688–90).

1.

Under the first *Strickland* prong, a court must ask "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The rules reflected in the American Bar Association standards "are guides to determining what is reasonable," though they are not dispositive. *Id.* at 688–69. Our review of counsel's performance "must be highly deferential." *Id.* at 689.

Here, there can be no question that appellate counsel's actions were objectively unreasonable. Before a decision was even issued, appellate counsel left her job and failed to inform either Folkes or the court of her departure, despite ethical obligations to do so. *See* S.C. App. Ct. R. 264. The record suggests that no one at the Commission reviewed Folkes's case, let alone informed him of a change in representation, leaving him constructively unrepresented during the tail end of his appeal. Then when an unpublished per curiam opinion came down, no attorney informed Folkes of the adverse decision against him or consulted with him at all. *Folkes II*, 2021 WL 62577, at *4 ("What is undisputed is that neither Mr. Dudek nor any other attorney moved to be substituted as

78

Petitioner's counsel upon Ms. Robinson's departure and that no attorney advised Petitioner of the adverse decision of the Court of Appeals or of his right to seek further appellate review."); *see Standards for Crim. Just.–Def. Function* § 4-9.2(i) (Am. Bar Ass'n 2017), https://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourth Edition/ (stating that "[i]f appellate counsel's representation ends but further appellate review is possible, appellate counsel should advise the client of further options and deadlines, such as for a petition for *certiorari*") (saved as ECF opinion attachment); *Gunner*, 749 F.3d at 517 (discussing the duties of an agent and finding that an appellate attorney had a duty to inform his client of the existence of and deadlines for collateral review where the timing was "integrally related to the filing of the transcript on direct appeal"); *cf.* Jonathan M. Purver & Lawrence E. Taylor, *Handling Criminal Appeals* § 186 (Mar. 2022 Update) ("If counsel has lost on appeal, he has a duty to his client to fully explain the meaning of the court's decision and what further avenues of review are open. An explanation to the client as to how he may petition for further review, *with special attention to informing him of the time limits involved*, should be rendered.").

This lack of notice and consultation is particularly glaring since Dudek and Robinson testified that they believed there to be not only nonfrivolous grounds for appeal, but strong ones. And there was every suggestion that a rational defendant would wish to appeal in this case, since Folkes was facing a life sentence. *See Flores-Ortega*, 528 U.S. at 480 (noting that trial counsel has a "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)").

Finally, the only sliver of communication Folkes *did* receive came from a form letter, with a forged signature from his former attorney (who, as far as he knew, was still his attorney), erroneously informing him that the Court of Appeals denied his petition for certiorari and that he had therefore exhausted his state court remedies. Notably, some of this conduct occurred *before* any appellate court "passed" upon his claim, *see Douglas*, 372 U.S. at 356, and all of it occurred *before and apart from* any filing for a rehearing on the part of appellate counsel.

Accordingly, appellate counsel's conduct was objectively unreasonable.

2.

Even if an error by counsel is "professionally unreasonable," a court may not set aside the judgment unless the alleged deficiency is prejudicial to the defense. *Strickland*, 466 U.S. at 691–92. However, "[a]ctual or constructive denial of the assistance of counsel altogether is legally *presumed* to result in prejudice." *Id.* at 692 (emphasis added). In *United States v. Cronic*, the Supreme Court found this presumption appropriate where "the accused is denied counsel at a critical stage of his trial." 466 U.S. at 659. The same concept applies on appeal. *Flores-Ortega*, 528 U.S. at 483; *Penson*, 488 U.S. at 88. A "critical stage" is one that holds "significant consequences for the accused." *Woods v. Donald*, 575 U.S. 312, 315 (2015) (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)).

It is hard to imagine a more "critical stage" with "significant consequences for the accused" than the time at which a court issues its decision—particularly when that decision, short though it may be, affirms a life sentence. Additionally, the time at which a court issues its opinion is supremely important for any number of subsequent remedies, as many

direct and collateral appeals have timeliness requirements. *See, e.g.*, S.C. App. Ct. R. 221(a) ("Petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court."); 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"). A defendant cannot timely appeal a decision he does not know has been issued. *See Smith*, 463 F.3d at 434. Yet during this crucial time, Folkes was not only bereft of counsel, but unaware of that fact.

This case bears a striking resemblance to the Supreme Court's decision in *Maples v. Thomas*, 565 U.S. 266 (2012). In *Maples*, while the petitioner's state postconviction claim was still pending, his two attorneys of record left their firm and ceased to represent him. *Id.* at 270. Neither informed the petitioner of their departure, sought leave of the court to withdraw, or moved for substitution of new counsel. *Id.* at 270–71, 275. Months later, the state court denied the petitioner's claim and sent notice to the counsel of record. *Id.* However, as there was "no attorney of record in fact acting on [petitioner's] behalf," the postings "were returned, unopened" and the time to appeal ran out. *Id.* at 271. The petitioner subsequently petitioned for a writ of habeas corpus in federal court. *Id.* However, the district court and Eleventh Circuit "rejected his petition, pointing to the procedural default in state court, *i.e.*, [the petitioner's] failure timely to appeal the [state] trial court's order denying him postconviction relief." *Id.* The Supreme Court determined that the

81

"extraordinary facts" of the petitioner's case demonstrated "cause"[13] sufficient to "excuse the default." *Id.* Concluding that the petitioner was "[a]bandoned by counsel . . . [and] left unrepresented at a critical time for his state postconviction petition," the Court noted that the petitioner "lacked a clue of any need to protect himself *pro se*." *Id.* The default, therefore, could not be laid at the petitioner's "death-cell door." *Id.*

Here, like in *Maples*, Folkes "was disarmed by extraordinary circumstances quite beyond his control." *Id.* at 289. During the pendency of his direct appeal, counsel abandoned him without giving him notice or seeking leave of the court, and no lawyer officially took over his representation. Folkes not only had no reason to believe he lacked representation, but also had every reason to think Robinson *was* still representing him. He heard nothing indicating otherwise, and in fact received a letter purportedly signed by her, expressly informing him that she had filed a petition for certiorari on his behalf that had been denied. Folkes, like the petitioner in *Maples*, lacked any indication that he "need[ed] to protect himself" either pro se or by seeking new counsel. *See id.* at 271. Because Folkes

---

[13] "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . "impeded [his] efforts to comply with the State's procedural rule."'" *Maples*, 565 U.S. at 280 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), *holding modified by Martinez*, 566 U.S. at 9). Because there "is no constitutional right to an attorney in state post-conviction proceedings[,]" and therefore no right to ineffective assistance of counsel in such proceedings, the Court in *Maples* did not look to constitutional rights when considering the duties of counsel, but instead focused on agency principles. *Coleman*, 501 U.S. at 752; *see Maples*, 565 U.S. at 280–81. As Folkes does not argue cause to excuse any procedural default, my focus here is on the constitutional claim of ineffective counsel.

was constructively denied assistance of counsel altogether during the conclusion of his direct appeal, prejudice may fairly be presumed. *See Strickland*, 466 U.S. at 692.

However, even if the court's ultimate resolution of a criminal case cannot be considered a "critical stage" of review, Folkes can still demonstrate prejudice here. A defendant can establish prejudice "when he demonstrates a reasonable probability that he would have filed an appeal 'but for' counsel's failure to file or consult." *Gordon*, 780 F.3d at 200 (quoting *Flores-Ortega*, 528 U.S. at 484). In this situation, a "defendant need not show that his appeal has merit." *Id.*

Here, Folkes testified that, had he known of the option, he would have wanted to press his appeal before the state Supreme Court. Dudek and Robinson indicated that they would have filed a rehearing petition on Folkes's behalf, had the choice been before them. And, even though Dudek testified that the decision to file for a rehearing rests with appellate counsel and may not be filed pro se, he acknowledged that, if advised, Folkes could have obtained alternative counsel and proceeded with the appeal.

Consequently, Folkes has sufficiently demonstrated prejudice resulting from appellate counsel's failure to notify and advise.

## VI.

For the reasons stated above, this is not a close case, but one in which the error of counsel is glaring. District courts are not obligated to bury their heads in the sand due solely to a self-imposed, overly restrictive interpretation of procedural rules and allow injustice

to silently proceed—particularly when, as here, it is not necessary to draw such uncompromising lines based on the unique facts before us.

Here, Judge Gergel exercised discretion and common sense to overcome a procedural bar to remedying a glaring injustice.[14] We should too. Accordingly, we should affirm the district court's decision.

---

[14] Moreover, it is worth noting that the remedy sought here is not expansive. *Folkes II*, 2021 WL 62577, at *10 n.6. Instead, the district court fashioned the remedy based on that provided in *Bostick*, 589 F.3d at 168, and ordered that Folkes be released from prison *only if* the State of South Carolina refused to reinstate his right to discretionary appellate review. *See Folkes II*, 2021 WL 62577, at *10 & n.6 (explaining that the remedy at issue was "fashioned to restore Petitioner's right to seek discretionary review of the South Carolina Court of Appeals adverse decision of September 24, 2010").